FRANCES A. DRILLING, Respondent, v. NEW YORK LIFE INSURANCE COMPANY, Appellant.

Appeal — unanimous affirmance of verdict directed by court — duty of Court of Appeals upon appeal therefrom — insurance — agreement in application that insurance should not take effect unless policy delivered and first premium paid while applicant in good health — no recovery where policy delivered day before final illness but premium not paid until after illness had commenced — when agent without authority to waive provisions of contract.

1. Upon an appeal from an unanimous affirmance by the Appellate Division of a judgment entered upon a verdict directed by the court, the Court of Appeals is called upon to determine whether there is any conflict in the evidence which would require submission of the case to the jury or whether, there being no conflict, the verdict should be the other way.

2. The knowledge which an agent receives for which his principal is to be charged must be such as is received while acting for the principal, not for another whose interests may be adverse.

3. Where by a written application for life insurance, subsequently accepted by the company, the insured agreed that the policy was not to take effect unless delivered to him and the first premium paid while he was in good health, and also agreed that the agent taking the application could not modify or waive either of the said requirements, and in an action upon the policy it appeared that the policy was delivered to the insured the day before he was taken sick with illness which resulted in death eight days thereafter, but that the premium was not paid until after he became ill and was then paid by the agent who personally loaned the insured the money required therefor, the plaintiff cannot recover.

4. The fact that at the time the agent paid the premium to the company she knew that the applicant was ill does not sustain a contention that by paying the premium with this knowledge she acted for and on behalf of the company and waived the provision

of the application requiring payment of the first premium while the insured was in good health. In undertaking to pay the premium for the applicant she acted as his agent, not the agent of the company, her knowledge of his illness was attained while she was his agent and acting as his agent and could not be charged to the insurer.

5. In any event, the applicant having agreed that the agent taking the application could not modify or discharge the contract or waive any of the company's rights or requirements thereunder, the contract must be given full force and effect, and, in the absence of evidence that the insurer or its general agents authorized a waiver of the provisions of the application, it must be held that the agent taking said application had no power or authority to waive its conditions or agreements. (*Thompson* v. *Travelers Ins. Co.*, 198 App. Div. 231, explained.)

*Drilling* v. *N. Y. Life Ins. Co.*, 198 App. Div. 965, reversed.

(Argued October 16, 1922; decided November 21, 1922.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 11, 1921, unanimously affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

*George W. Watson* for appellant. Even if Drilling had not in fact known he was not in good health, that fact could not operate to effectuate the policy. It is not his knowledge of the condition, but the fact of his condition, which constituted the agreed condition precedent to the effectuation of the policy. (*Carmichael* v. *John Hancock Ins. Co.*, 48 Misc. Rep. 386; *Breeze* v. *Metropolitan Ins. Co.*, 24 App. Div. 377; *Foote* v. *Ætna Life Ins. Co.*, 61 N. Y. 571; *Elliott* v. *Mutual Life Ins. Co.*, 27 N. Y. Supp. 696; *Bernard* v. *United Life Ins. Co.*, 8 Misc. Rep. 499.) There could be no waiver by the agent of the conditions precedent. (*Stewart* v. *Union Mutual Ins. Co.*, 155 N. Y. 257; *Russell* v. *Prudential Ins. Co.*, 176 N. Y. 178; *Ames* v. *Manhattan Ins. Co.*, 40 App. Div. 465; 167 N. Y. 584; *MacCormack* v. *Security Mutual Ins. Co.*, 220 N. Y. 447; *Wood* v. *American Fire Ins. Co.*, 149 N. Y. 382; *Forward* v. *Cont. Ins. Co.*, 142 N. Y. 382; *Hastings* v. *Brooklyn Life Ins. Co.*, 138 N. Y. 473; *McNally* v. *Ins.*

*Co.,* 137 N. Y. 389; *Ruggles* v. *Am. Central Ins. Co.,* 114 N. Y. 415; *Palmer* v. *Phœnix Ins. Co.,* 84 N. Y. 63; *Marcus* v. *St. Louis Mutual Ins. Co.,* 68 N. Y. 625.). The acts and declarations of Mrs. Stedman were not equivalent to a waiver in any event. (*Hewitt* v. *Am. Union Life Ins. Co.,* 66 App. Div. 80; 85 App. Div. 279; *Genung* v. *Met. Ins. Co.,* 60 App. Div. 424; *Buffum* v. *Ins. Co.,* 3 Allen, 360.) Since the conditions precedent to the taking effect of the policy were not complied with, and there having been no waiver of such non-compliance there never was a completed contract of insurance. (*Goldstein* v. *N. Y. Life Ins. Co.,* 176 App. Div. 813; 227 N. Y. 575; *Rathbun* v. *N. Y. L. Ins. Co.,* 165 Pac. Rep. 997; *Logan* v. *N. Y. L. Ins. Co.,* 181 Pac. Rep. 906; *Klein* v. *Prudential Ins. Co.,* 221 N. Y. 449; *Poste* v. *Am. Union Life Ins. Co.,* 32 App. Div. 189; 165 N. Y. 631; *Carmichael* v. *John Hancock Ins. Co.,* 116 App. Div. 291; *Holloway* v. *Met. Life Ins. Co.,* 154 N. Y. Supp. 194; *Maloney* v. *Masonic Aid Ins. Co.,* 8 App. Div. 575; *Roblee* v. *Masonic Life Ins. Co.,* 38 Misc. Rep. 481.)

*Bayard J. Stedman* for respondent. The policy in question took effect on September 13, 1917, the date of delivery, and the court was justified in so deciding. (*Peck* v. *Washington Life Ins. Co.,* 91 App. Div. 601; *Spencer* v. *C. M. L. Ins. Co.,* 142 N. Y. 509; *Ames* v. *Manhattan Life Ins. Co.,* 40 App. Div. 471; *Cushman* v. *U. S. Life Ins. Co.,* 70 N. Y. 77; *Genung* v. *Met. Ins. Co.,* 60 App. Div. 426.) The question of estoppel by waiver should be resolved in favor of the plaintiff. (*Whipple* v. *Prudential Ins. Co.,* 222 N. Y. 39; *Thompson* v. *Travelers Ins. Co.,* 198 App. Div. 231.)

CRANE, J. This is an action on an insurance policy. The plaintiff is the wife of the insured, and the beneficiary named in the policy. A verdict was directed for the plaintiff and the judgment entered thereon has been unanimously affirmed by the Appellate Division. The appeal comes here by leave of this court.

1922.]                Opinion, per CRANE, J.        [234 N. Y. 234]

Section 589 of the Civil Practice Act provides that no unanimous decision of the Appellate Division of the Supreme Court that there is evidence supporting or tending to sustain a finding of fact or a verdict not directed by the court shall be reviewed by the Court of Appeals. As the verdict in this case was directed by the court in favor of the plaintiff we are called upon to determine whether there was any conflict in the evidence which would require submission of the case to the jury or whether there being no conflict, the verdict should be the other way, that is, for the defendant.

We agree that the evidence upon the material points is not conflicting and that the facts which are thus established show the following:

On August 29, 1917, Henry W. Drilling applied for a policy of life insurance in the sum of $1,000 on the ordinary life plan, payable to his wife, Frances A. Drilling, the plaintiff herein. On his application immediately above his signature in large heavy type appear these words: " I agree as follows: 1. That the insurance hereby applied for shall not take effect unless the first premium is paid and the policy is delivered to and received by me during my lifetime and good health, and that unless otherwise agreed in writing, the policy shall then relate back to and take effect as of the date of this application; 2. * * *; 3. That only the President, a Vice-President, a Second Vice-President, a Secretary or the Treasurer of the Company can make, modify or discharge contracts, or waive any of the Company's rights or requirements, and that none of these acts can be done by the agent taking this application."

The application was taken by the company's agent, Rose Stedman, and sent to its branch office in Buffalo. By this written application and its subsequent acceptance by the company, we have an express written contract whereby the insured agrees that the insurance is not to take effect unless: 1. The policy is delivered to him

while he is in good health; 2. The first premium be paid during his good health; and 3. That the agent taking the application cannot and shall not modify or waive these two requirements.

On the 13th day of September, 1917, Rose Stedman, having received from the company the policy applied for, took it to the home of Henry Drilling. He was a farmer about fifty-three years of age, living at Darien, New York. The agent saw him at his home and found him unprepared financially to take up the policy. The evidence on this point is as follows: " He said ' Mrs. Stedman, I am not ready for my policies because I haven't sold my wheat,' and I said ' Never mind, you can have it anyway,' and he said quite a few words, thought he would wait, and I said ' I can arrange that in some way and I will pay for them,' and I told him how I would do, I would get the money at the bank and pay for them, and he said ' Well, if you will do that I will pay you interest.' " After this arrangement the agent left the policy with the insured.

Rose Stedman, the agent, had a son who was a doctor, named Earl S. Stedman, with whom she resided at the time of these occurrences at Attica, New York. On the evening of the 13th of September, the day the policy was delivered, the doctor was called on the 'phone to attend the insured. He did not go until the next day. On the 14th he found Henry Drilling sick of erysipelas of which disorder he died eight days thereafter, September 22, 1917. Dr. Stedman attended the sick man every day from the 14th to the 21st inclusive and toward the last, two or three times a day.

On the 14th of September, the day the doctor first visited Drilling, the first premium on his policy had not been paid. The agent had no money with which she could pay the premium as she had undertaken to do. Before the 17th of September she arranged with the Citizens Bank of Attica to procure a loan, and sometime

between the 14th and the 17th sent her check to the company's office in Buffalo for the amount of the premium less her commissions. The check is dated September 14, 1917. It was received in the Buffalo office on the 20th or late in the afternoon of the 19th of September. Mrs. Stedman was not sure of the date on which she sent the check. She says it might have been the 14th or 15th, but she feels positive that she sent it before the 17th. The doctors who testified state that if erysipelas were apparent on September 14th, it must have existed in its incipient stages for twenty-four hours before, or on September 13th.

What were the rights of the insured and the insurer under the application and the policy? As to the first agreement contained in the application, we have the agent delivering the policy to the insured on the 13th day of September, 1917, at a time when she believed him to be in good health; no one knew so far as this record discloses that he was sick or had erysipelas. We can say, therefore, that the policy was delivered to the insured while he was in good health or if he were not, the fact was not known to the agent so that she could not by any means have waived this provision of the application, even had she the power so to do. As to the second provision of the application, the payment of the premium while the insured was in good health, we have these undisputed facts. Henry W. Drilling was sick on the 14th of September, 1917, of erysipelas. He was attended for this sickness by Dr. Stedman, a son of the agent. He continued sick until the day of his death, September 22, 1917. The premium was paid by the check of the agent sometime between the 14th and 17th, and during the time when the insured was sick. This second agreement of the application, that the first premium should be paid while the insured was in good health, was not complied with. The premium was paid while he was in his final illness. The plaintiff seeks to

get around this provision of the application by saying that the agent knew from her son, the doctor, that the applicant was sick and that by paying the premium with this knowledge she acted for and on behalf of the company and waived this provision of the application. Waiver has been pleaded and it is claimed that this knowledge of Mrs. Stedman becomes the knowledge of the company so as to put it in the position of accepting the first premium with knowledge that the applicant or the insured was ill.  There is difficulty in this position, even if the agent had the power to waive the applicant's agreement, and it is this: in undertaking to pay the premium for the applicant, she acted as his agent, not the agent of the company.  She undertook to loan Mr. Drilling the amount of the first premium for which he was to pay her interest.  It is said that this loan was repaid later by Mr. Drilling's estate with interest.  This was a personal transaction between the agent and the applicant.  There was nothing in the record to show that she was authorized to make loans on interest for the premiums which were due.  When she sent the check to the insurance company on the 14th or 15th of September, if she had knowledge of Mr. Drilling's illness, it was knowledge which she had already attained while she was his agent and acting as his agent, and this knowledge under no principle of law could be charged to the insurance company.  The knowledge which an agent receives for which his principal is to be charged must be such as is received while acting for the principal, not for another whose interests may be adverse.  (*Henry* v. *Allen*, 151 N. Y. 1; *Benedict* v. *Arnoux*, 154 N. Y. 715; Mechem on Agency [2d ed.], sec. 1815.)

Under these circumstances there was no waiver of this second condition in the application, that the premium should be paid while the insured was in good health.

But I go even further and am of the opinion that Rose Stedman, as the agent taking this application for

1922.] Opinion, per Crane, J. [234 N. Y. 234]

insurance from Henry Drilling, had no power or authority to waive either of these two conditions or agreements in the written application. By the third provision of the application above quoted, the applicant agreed that the agent taking the application could not modify or discharge the contract or waive any of the company's rights or requirements thereunder. Here was a plain and explicit agreement that Rose Stedman, the agent, had no power to waive the payment of the first premium while the insured was in good health. Surely the insurance company and the applicant had power to make such an agreement and there is no reason that I can see why the contract should not be given full force and effect. A contract for insurance is no different than any other contract. The insurance company is entitled to have its contract enforced by the courts as written.

This court has held many times that where the provision restricting the agent's power to waive was contained in the policy as distinguished from the application, an agent's acts and words before the delivery of the policy and upon which the insured relied, might nevertheless amount to a waiver. In *Wood* v. *American Fire Insurance Co.* (149 N. Y. 382, 386) it was said: " The restrictions inserted in the contract upon the power of the agent to waive any condition, unless done in a particular manner, cannot be deemed to apply to those conditions which relate to the inception of the contract when it appears that the agent has delivered it and received the premiums with full knowledge of the actual situation. To take the benefit of a contract with full knowledge of all the facts and attempt afterwards to defeat it, when called upon to perform, by asserting conditions relating to those facts would be to claim that no contract was made and thus operate as a fraud upon the other party." In *Whipple* v. *Prudential Insurance Company of America* (222 N. Y. 39, 42) this court said: " The application is a

proposition or request for the contract of insurance between the applicant and the company, the statements of which upon its acceptance by the company bind the applicant and create correlative rights to the company. The company may relinquish or waive any of those rights. The obligations or rights of the applicant or of the company, arising through the application and its acceptance, cannot be restricted or affected by any provision of the policy, as a contract, until the policy has taken effect and become a contract between the parties." (See, also, *Stewart* v. *Union Mutual Life Insurance Co.*, 155 N. Y. 257; *Forward* v. *Continental Insurance Company*, 142 N. Y. 382; *Hastings* v. *Brooklyn Life Insurance Co.*, 138 N. Y. 473.) The cases of *Ames* v. *Manhattan Life Insurance Company of New York* (40 App. Div. 465; affd., 167 N. Y. 584) and *McClelland* v. *Mutual Life Insurance Company of New York* (217 N. Y. 336) are relied upon by the respondent. In those cases the provision that the agent could not waive any terms or conditions of the contract was contained in the policies, not in the applications signed by the insured. Naturally the insured did not know the agent's limited authority until he got his policy. It was decided that the delivery of the policy by the agent with full knowledge of facts inconsistent with the conditions of the application, constituted a waiver by the company of those conditions. Here, however, the contract is contained in the application. Drilling, when he put his name to it, knew that the local agent, Rose Stedman, had no power to waive the provision that the insurance policy thereafter to be delivered would not take effect until the first premium was paid while he was in good health. Nothing contained in the policy could give Drilling any further information regarding the limitation upon the agent's authority. He made the contract with the company with the full understanding, as we must assume, that there would be no insurance on his life until the premium

was paid by him or for him while he was in good health. The fact that Rose Stedman may have paid the premium, knowing that the applicant was in ill health, could not, therefore, constitute a waiver of this agreed limitation upon her authority to waive. If it did, then as far as I can see no contract could ever be made by an insurance company limiting the power of an agent. Surely the doing of an act cannot of itself waive an agreement that it should not be done. It would be foolish to contract that the knowledge of a local agent, not communicated to the principal, would not bind the company if the fact of such uncommunicated knowledge alone nullified the contract. Conditions may exist where the acts of an agent and the adoption of those acts by his company would estop the company from denying the agent's authority. Each case more or less depends upon the facts involved. I do not find, however, anything in this case making it unjust or a fraud upon the insured or his beneficiary for the company to insist upon its contract with Henry Drilling that no insurance was to be effected until the first premium was paid while he was in good health. I can find nothing to indicate that the company or its general agents ever authorized Rose Stedman to waive any of the provisions of the application or that they are estopped from insisting that she did not have such authority. The binding force of agreements contained in applications for insurance was recognized in *McCormack* v. *Security Mutual Life Insurance Co.* (220 N. Y. 447) and determined in *Hamilton* v. *Fidelity Mutual Life Association of Philadelphia* (27 App. Div. 480; affd., 177 N. Y. 575); *Kenyon* v. *K. T. & M. M. A. Assn.* (122 N. Y. 247). (See, also, *Georgia Home Insurance Co.* v. *Goode & Co.*, 95 Va. 751; *Weidert* v. *State Insurance Co.*, 19 Ore. 261; *Reese* v. *Fidelity Mutual Life Association*, 111 Ga. 482; *Dimick* v. *Met. Life Ins. Co.*, 67 N. J. L. 367; *Lycoming Fire Insurance Co.* v. *Langley*, 62 Md. 196.)

It is said that *Thompson* v. *Travelers Insurance Co.*

(198 App. Div. 231) is an authority binding us to the contrary of what I have here written because this court denied on November 29, 1921, the application for leave to appeal. The defendant there contended that one Backman had no authority to waive the requirement that the first premium must be paid while the insured was in good health. The application of the insured contained a provision similar to that in this case limiting the authority of the agent. We were, however, cut off from the power of reviewing the question of the agent's authority by reason of the unanimous affirmance of the Appellate Division, the question having been submitted to the jury. There was no exception to any ruling which we considered sufficient to bring the matter up for review. We, therefore, have not heretofore passed upon this question.

For the reasons here stated, the judgments of the courts below must be reversed and the complaint dismissed, with costs in all courts.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND, McLAUGHLIN and ANDREWS, JJ., concur.

Judgment accordingly.