FREDA ABBOTT, as Administratrix of the Estate of SAMUEL ABBOTT, Deceased, Appellant, *v.* PRUDENTIAL INSURANCE COMPANY OF AMERICA, Respondent.

Argued May 18, 1939; decided November 14, 1939.

*M. Maurice Chacchia* for appellant.

*Nicholas J. Weldgen* for respondent.

LEHMAN, J. During the period from March 4, 1935, to August 12, 1935, the defendant insurance company issued six industrial life insurance policies for sums aggregating $1,344 upon the life of Samuel Abbott. The insured died on August 24, 1935, twelve days after the last policy was issued. The plaintiff, as administratrix of the goods, chattels and credits of the insured, her husband, has brought this action to recover upon the policies.

Each policy contained a provision that " this Policy shall not take effect if the Insured die before the date hereof, or if on such date the Insured be not in sound health, but in either event the premiums paid hereon, if any, shall be returned." It is not disputed that the insured was not in sound health at the time the policies were issued. Since 1931 he had been suffering from chronic myocarditis due to a strain caused by an industrial accident. He was unable to do " physical " work and, at times, he was confined to his bed and he had received an award of compensation under the Workmen's Compensation Law (Cons. Laws, ch. 67). The insured had taken out other industrial policies in the defendant insurance company before he suffered the heart strain. In 1933 he had attempted to obtain additional insurance but the company's agents informed him that he could not pass a physical examination. Nevertheless the same agents, with knowledge

that the insured was suffering from a serious heart injury, delivered the policies in suit. The corporation, acting through its agents, thus issued policies by which the corporation in form assumed an obligation which in fact could never be enforced, *as written*, because it was made subject to a condition that the insured was, at the time of delivery, in good health, though the insured, to the knowledge of the agents, was then suffering from a serious cardiac impairment.

If the company, acting through duly authorized agents, with knowledge of the invalidity of the policies, chose to deliver them as valid instruments and, misleading the insured, to collect the premiums thereon, the company is estopped from enforcing the condition. Delivery of the policy would in such case have the effect of a waiver of the condition. " If the insurance company or its general agent is at the time of the issue of the policy notified of facts which, under the terms of the policy, would render it void if not noted on the policy, the company cannot avail itself of such a defense." (*Lewis* v. *Guardian Fire Assur. Co.*, 181 N. Y. 392, 395, and cases there cited.) Though the rule was repudiated by the Supreme Court of the United States it remains with " proper limitations " the law of this State. (*Satz* v. *Massachusetts Bonding & Ins. Co.*, 243 N. Y. 385.) It has been applied to conditions that a policy shall be void if the insured is not in good health when the policy is delivered (*McClelland* v. *Mutual Life Ins. Co.*, 217 N. Y. 336), and the rule so applied has been recently approved by this court in *Bible* v. *John Hancock Mut. Life Ins. Co.* (256 N. Y. 458); *Lampke* v. *Metropolitan Life Ins. Co.* (279 N. Y. 157). These cases, however, emphasize that estoppel or waiver arises only when the agent has authority, actual or apparent, to waive conditions in a policy, and the defendant insurance company is charged with the knowledge of the agent. (Cf. *Drennan* v. *Sun Indemnity Co.*, 271 N. Y. 182.) In this case the company denies that the agents had such authority and claims that the insured had warning and knowledge of the limitations upon the agents' authority.

Here, as in *Bible* v. *John Hancock Mut. Life Ins. Co.* (*supra,* p. 463) the agent " was authorized not only to solicit applications, but to make delivery of the policies, and upon delivery and afterwards to collect the weekly premiums." It is now firmly established in this State that such an agent has apparent authority to bind the company unless the assured had notice of an actual limitation upon his authority. Whether the assured did have such notice is an issue presented in this case. Not only the policies in suit but policies previously issued to the same assured contained certain " General provisions " including a provision that " no agent has power in behalf of the Company to make or modify this or any other contract of insurance, to extend the time for paying a premium, to waive any forfeiture, or to bind the Company by making any promise, or by making or receiving any representation or information." Before the policies were issued, the assured signed and delivered applications for insurance. These also contained clauses above the signature of the applicant that " I also understand and agree that no agent has power in behalf of the company to make or modify this application for insurance, or to bind the company * * * by making or receiving any representation or information." The defendant maintains that this clause in the application and the general provisions in policies previously issued to the applicant gave notice to the applicant that the agent had no authority to waive the condition in the policy that the assured was in good health at the time the policy was delivered. The applications were not attached to the policies and were, therefore, not part of the contract of insurance. The court excluded them when they were offered in evidence, holding that under section 58 of the Insurance Law (Cons. Laws, ch. 28) the contents of an application not attached to a policy may not be considered for any purpose and that the applications are not competent evidence upon any issue. The question here presented is whether the exclusion of these applications presents reversible error.

Both the condition contained in the policy that the policy shall not take effect if the insured is not in sound health on the date of its delivery and the provision that no agent has authority to modify the contract of insurance or waive any of its conditions constitute part of the written contract between the parties. Both, too, might be waived by the insurance company acting through a duly authorized agent. The policy gives notice, it is true, of a limitation upon the authority of any agent to waive conditions, but that notice is received only at the time the policy is delivered. It does not " apply by retroaction so as to nullify a waiver or estoppel having its origin in conduct antecedent to the contract." None the less no waiver or estoppel arises where, before the contract is made, there has been " warning, *extrinsic to the policy*, of a limitation on the apparent authority proper to an agent." (Italics are new.) (*Bible* v. *John Hancock Mut. Life Ins. Co., supra*, pp. 462, 463, citing *Drilling* v. *New York Life Ins. Co.*, 234 N. Y. 234, 242.)

Every policy of insurance delivered in this State must contain the entire contract between the parties, and nothing may be incorporated therein by reference to any " application or other writings unless the same are indorsed upon or attached to the policy when issued; and all statements purporting to be made by the insured shall in the absence of fraud be deemed representations and not warranties." (Insurance Law, § 58.) If the application had been attached, the provision that the applicant agrees that no agent has power to bind the company would have been incorporated in the agreement of the parties, and no claim could then have been made that the applicant did not at that time have notice of limitations upon the agents' authority. That would be true even if there might otherwise be dispute as to whether the applicant read the application or knew its contents. " Controversy is foreclosed if the application is annexed." (*Bible* v. *John Hancock Mut. Life Ins. Co., supra*, p. 464.) Because the application was, in this case, not attached to the policy, its contents are of course not incorporated therein and form no part of any contract between

the parties which is the subject of this action. That is equally true of the policies of insurance previously issued to the same applicant. The applications, like the earlier policies, have no contractual force in this action. They are, like oral statements made during the negotiations, " extrinsic to the policy " and in an action upon the contracts are relevant only where evidence of matters extrinsic to the contracts would be admissible. Provisions in the application which the applicant failed to read or understand, are of no more effect than if they had never been written. If read and understood, and certainly a jury might infer that when the applicant signed the application he saw the provision immediately above his signature, then the applicant had warning of the limitation of the agents' authority, and a contention that he was misled by the agents' apparent authority would be without foundation. It is clear that except for the provisions of section 58, the application would be competent and cogent proof that the assured knew that the agents' authority was limited and was not misled by appearance of greater authority in the agents. It constitutes a signed admission that warning of the limitation was received before any contract was made, and though the admission that warning was received is not conclusive there can be no doubt that in the absence of statute it would have the same force as any other admission, oral or written.

All the members of the court of course recognize that the claim of waiver or estoppel fails if the defendant shows by competent evidence of matters extrinsic to the contract that the assured knew of the agents' authority prior to the delivery of the policy. What evidence can be produced to show that the assured knew of such limitation other than evidence that he was informed of the limitation either orally or in writing, or evidence that the assured admitted, either orally or in writing, that he had such knowledge? It cannot be disputed that evidence of a conversation prior to the making of the contract through which the assured received notice or admitted knowledge of the limitation

would be competent and relevant, but argument is made that evidence that such information was conveyed by means of a printed form of application and that the assured signed such an application is incompetent under section 58 of the Insurance Law, unless the application is attached to the policy.

We have had frequent occasion to state the purpose and effect of the section as we construe it. The latest statement is contained in the opinion of HUBBS, J., in *Lampke* v. *Metropolitan Life Ins. Co.* (*supra*, p. 162): " Prior to the enactment of section 58 of the Insurance Law (Cons. Laws, ch. 28), a policy might, by stipulation or reference therein, make a part of itself statements of the assured which were not embodied in the policy and such material statements were warranties the falsity of which avoided the policy. The insured, as a part of his contract, did not have a copy of such statements. He could not, by reading his policy, know what the statements were. He had no opportunity to correct any error in the statements. By the enactment of section 58 the Legislature intended to and did' change the situation by providing that the policy should contain the entire contract and that nothing could be incorporated therein by reference. Section 58 provides: ' Any waiver of the provisions of this section shall be void.' After the enactment of section 58 the defense that the insured made false statements inducing the issuance of the policy ceased to constitute a valid defense unless such statements were made a part of the policy as provided in the section. The decisions previously made, holding such defense to be valid, no longer represented the law of the State. By many decisions the law has been definitely settled to the effect that false material statements made to induce a company to issue its policy, whether made orally or in writing, no longer constitute a defense unless such statements are attached to or indorsed upon the policy. Not constituting a defense, no evidence can be received of such material false statements. (*Archer* v. *Equitable Life Assur. Society*, 218 N. Y. 18.) Since that decision a defense based upon

alleged false statements, not made a part of the policy as required by section 58, no longer has existed in this State. It makes no difference whether such false statements be called representations or warranties."

Our ruling there that no statements "whether made orally or in writing" can be made a part of the contract of insurance or if false constitute a defense to the contract "unless such statements are attached to or indorsed upon the policy," is in accord with the language and purpose of the statute. For the protection of the assured the statute requires that when the assured receives a policy of life insurance he may be able to read, in the policy itself, every provision of the contract the insurance company has made and every material representation which he may have made to induce the company to issue the policy. The parties to a contract of insurance may, subject to statutory restrictions not important here, determine what terms shall be inserted in a contract of life insurance. The statute defines the form which the parties must use to express their intention. If the application or any other writing is attached to the contract, it becomes a part thereof. If the application or other writing is not attached it has no more effect than oral promises or oral representations. That is what the statute says and that is what this court said in the opinion of HUBBS, J., in *Lampke* v. *Metropolitan Life Ins. Co. (supra)*. In this case, then, the effect of the statute is to preclude the defendant from availing itself of the false representations contained in the signed application as a defense to an action to enforce the contract as written. When, however, the beneficiary of the policy seeks by extrinsic evidence to estop the company from enforcing a condition in the policy as written, the statute does not in terms or by fair implication provide that the company may not show either by oral or written evidence that the assured was not misled by the agent's appearance of authority.

"The purpose of section 58 of the Insurance Law in requiring the whole contract to be stated in the policies, and not pieced out by documents included by mere reference,

was not the relief of the insurer. It was the protection of those insured and of the beneficiaries claiming under them." (*Bible* v. *John Hancock Mut. Life Ins. Co., supra,* p. 464.) The courts to carry out that purpose have given the statute a construction broad enough to ban every device by which the terms of the contract embodied in the policy may be altered or defeated by statements of the insured or agreements made orally or contained in any other writing which the insured may have made or signed without fully understanding their purport or effect. By no stretch of its language can we read into the statute an intent that the insured or his beneficiaries, by claiming ignorance of matters revealed, either orally or in an application or other writing, may impose upon the insurance company by estoppel a liability that the company never intended to assume. That proof of information conveyed orally is admissible is, as we have said, not disputed; but we are told that a distinction should be drawn between proof of knowledge made through production of a signed application and proof of knowledge made through testimony of conversations or through production of earlier contracts.

No language of the statute is pointed out to justify such distinction, and no sound reason for it is apparent. If the insured after reading the application had refused to sign it or had stricken therefrom the clause giving notice of the limitation on the agents' authority, it could hardly be claimed that the insured had no warning of the limitation. Contention can hardly be made that in such case the unsigned or changed application would not have been admissible in evidence. The signature to the application does not conclude the controversy as to whether the insured read the notice handed to him, but it permits the inference that it was read. That evidence may be at least as reliable and persuasive as testimony of conversations would be or testimony that the insured read the applications and refused to sign them; or as the evidence actually admitted that similar provision was contained in earlier policies. The statute does not render the application, though not attached

to the policy, incompetent evidence where it is relevant upon a controversy as to matter extrinsic to the contract, and exclusion of that evidence constitutes reversible error

The order of the Appellate Division should be affirmed and judgment absolute ordered against appellant on the stipulation, with costs in all courts.

RIPPEY, J. (dissenting). This action was brought by the plaintiff as administratrix of the goods, chattels and credits of her deceased husband, Samuel Abbott, to recover upon six weekly premium industrial life insurance policies issued by defendant upon the life of deceased on the following dates: Four policies, March 4, 1935; one policy, July 1, 1935, and one policy, August 12, 1935. Samuel Abbott died on August 24, 1935, twelve days after the issuance of the last of these policies, death concededly resulting from a chronic heart disease from which he had suffered since 1931 in which year he received a heart strain in an industrial accident. Plaintiff recovered before a jury at Trial Term. Upon appeal, the Appellate Division reversed the judgment appealed from by a divided vote and granted a new trial on a question of law only. This " implies that the Appellate Division has examined the facts and is satisfied therewith " (*Grulich* v. *Paine,* 231 N. Y. 311, 315). There was substantial and ample evidence to sustain the verdict. Plaintiff then gave a stipulation for judgment absolute and appealed to this court.

Transactions between the deceased and the agents of defendant occurring antecedent to the delivery of the policies are of importance and reference must be made to them in some detail. Defendant's agent, Dillon, and its assistant superintendent in charge of its local office, Guinan, knew plaintiff and her husband by reason of previous dealings with them with regard to insurance. Both of them knew of Samuel Abbott's accident in 1931 and of his resulting sickness which both knew had confined him to his bed for a considerable period of time and to his house under his physician's care all of the time up to and including

the date of the issuance of the policies. Dillon knew of and had spoken to plaintiff and her husband concerning the latter's claim for workmen's compensation for permanent injury. In 1933 Dillon advised plaintiff's husband that he would be unable to procure more insurance because he would be unable to pass a medical examination and by the advice of both Dillon and Guinan he was persuaded not to apply for payment of the cash surrender value of certain policies then in effect upon his life. In February, 1935, without invitation by plaintiff or assured, Dillon and another agent called at their home and informed them that the defendant insurance company was issuing a new form of insurance contract referred to as an " anniversary policy " for which the assured was eligible due to the fact that no medical examination was necessary, and that inasmuch as the assured then had a $500 policy with the defendant, he could procure enough of this new insurance to bring his total coverage to $1,500. Plaintiff and her husband inquired of them how it was then possible to procure insurance upon the life of the husband when he was uninsurable in 1933. Dillon replied that this was a new type of policy. Upon application signed by the assured at this conference, insurance in the total amount of $954, divided into four policies, was issued by the defendant on March 4, 1935. The policies were delivered to the insured by Dillon, who collected the premiums on these policies thereafter. On an occasion in June, 1935, Dillon called at plaintiff's home and advised her to take the cash surrender value of various older policies then in effect (issued prior to her husband's accident) on the life of her husband, explaining to her that she could then procure more of the anniversary insurance to take its place. She thereupon applied for and secured the cash surrender value of some of her husband's insurance and on July 1, 1935, procured from defendant another weekly premium industrial policy in the amount of $195 upon the life of her husband and on August 12, 1935, another identical policy.

The written applications for the foregoing policies were signed by the deceased and were forwarded to the home office of the company where the policies were issued. The applications were not attached to nor endorsed upon the policies. The questions in the applications were in such form as to indicate that the defendant expected that they should be answered by somebody other than the insured. Question 17-a read: " What is the present condition of health of the life proposed? " and question 19 read: " Has life proposed ever suffered from consumption, asthma, spitting of blood  *  *  *  or accident of any kind? " These furnish a fair sample of the form and indicate the person from whom the information was sought and reasonably it might be inferred that the agent and not the applicant was expected to answer those questions. There was evidence in this case from which the jury were warranted in finding that the applications were not filled out by Dillon or by the insured or by any one in his behalf at the time Dillon procured the signature of deceased and that they were filled out later in Dillon's office. In view of the facts that have been recited above, it is a reasonable inference that the insured would not have signed the applications nor applied for the policies had he known that representations that he was in good health were contained therein.

All premiums required on the various policies were paid to Dillon at the times when they were required to be paid. Proofs of loss were produced and received in evidence and it was conceded that they were timely made and in due form.

Defendant called no witnesses. Dillon, the agent, was in court throughout the trial. It offered certain documentary evidence of which the only pertinent part on this appeal is a clause contained in each of the written applications made for each policy in suit, which read as follows: " I also understand and agree that no agent has power on behalf of the Company to make or modify this application for insurance, or to bind the Company by making any promise, or by making or receiving any representation or infor-

mation." Counsel stated that his purpose in offering that evidence was to show the limitation of authority of the agent and that the insured had notice of the limitation of his authority. Upon objection by plaintiff, the evidence was excluded under the provisions of section 58 of the Insurance Law. The correctness of that ruling was the only question considered as a basis for reversal in the Appellate Division and the only question to be considered as a basis for decision in this court.

The policies themselves contained a clause that " this policy shall not take effect if the Insured die before the date hereof, or if on such date the Insured be not in sound health, but in either event the premiums paid hereon, if any, shall be returned " and another clause that " no condition, provision or privilege of this Policy can be waived or modified in any case except by an endorsement hereon signed by the President," etc., and that " no agent has power in behalf of the Company to make or modify this or any other contract of insurance, to extend the time for paying a premium, to waive any forfeiture, or to bind the Company by making any promise, or by making or receiving any representation or information." Plaintiff conceded that her husband was not in sound health at the respective dates on which the policies were issued and delivered or at the times the several applications were signed, but she sought to avoid those conditions of the policies on the ground that the defendant knew of the condition of health of the insured but in spite of its knowledge of the ill health issued the policies and was thereby estopped to assert such ill health as a defense.

It is now settled that the provisions contained in the policies limiting the authority of the agent do not constitute a good defense to the claim of waiver and estoppel where the alleged waiver occurred before the issuance of the policies (*Bible* v. *John Hancock Mut. Life Ins. Co.,* 256 N. Y. 458, 463; *Lampke* v. *Metropolitan Life Ins. Co.,* 279 N. Y. 157, 165). To avoid such a waiver and estoppel, the defendant may show by competent evidence extrinsic of the

policy that the insured knew of the limitation of the agent's authority prior to the issuance and delivery of the policy. Whether the insured had any such knowledge is a question of fact (see *Lampke* case, p. 165) and was submitted to the jury in the case at bar as a question of fact and is not a question of law for this court. The admission of the insured that he had such notice may be shown by the clauses in the application where the application is endorsed upon or attached to the policy, but not otherwise (Insurance Law, § 58; *Bible* case and *Lampke* case, *supra*). As to the force of the statute to exclude evidence of notice to the insured derived from the unattached application, Chief Judge CARDOZO says in the *Bible* case: " To-day, the restriction upon the authority of the agent and the manner of its exercise is commonly stated in the application signed by the insured. Controversy is foreclosed if the application is annexed. Here it was not annexed, and notice of the limitation, if imparted, must be proved in some other way. In these circumstances, whatever would have been effective before the adoption of the statute to charge the defendant with an estoppel through notice to its agent, must be equally effective now. The purpose of section 58 of the Insurance Law in requiring the whole contract to be stated in the policies, and not pieced out by documents included by mere reference, was not the relief of the insurer. It was the protection of those insured and of the beneficiaries claiming under them. The Legislature had no design to make their situation harder " (p. 464). No offer was made to prove by any other evidence notice of the restriction upon the authority of the agent to bind the company.

It is asserted here that a distinction exists as between offering the application to show misrepresentations by the insured as to his health and to show notice to the insured extrinsic of the policy previous to its issuance of the limitation upon the agent's authority. The clause in the applications was offered solely to prove the latter. On the basis of that distinction and for that purpose the Appellate Division has held that the provisions of section 58 of the

Insurance Law have no application and that the evidence was admissible. It is suggested by the lower court that Chief Judge CARDOZO had that in mind when he cited the case of *Drilling* v. *New York Life Ins. Co.* (234 N. Y. 234), but it might have been observed, by reference to the record in the *Drilling* case, that the application was attached to and made a part of the policy at the time of its delivery. Reading the entire statement of Judge CARDOZO in the *Bible* case (p. 462), it is evident that the offer of the evidence from the application in the form in which it was offered could not supply the element of proof or warning "extrinsic to the policy, of a limitation on the apparent authority proper to an agent." If the ruling of the Appellate Division is correct it means that the statement of the insured that he knew of the limitation of the agent's authority might be incorporated into the contract between the parties by reference to the unattached application, the specific thing that section 58 prohibits. The section means what it plainly says, as this court has construed it in the *Bible* case, that the contract is complete on delivery of the policy, which must contain the whole contract between the parties, and that nothing in the application can be deemed a part thereof unless the application is endorsed upon or attached to the policy at the time of its delivery to the assured. Proof of notice to the assured of such limitations may, of course, be shown by evidence extrinsic to the policy, but when an attempt is made to show it by statements made in the application the evidence must be excluded unless the application itself is part of the contract between the parties.

The purpose of the Legislature is apparent and the salutary effect of the statutory provision is particularly pertinent in the case at bar, where the agent, who is alleged to have received all the information and to have known of the ill health of the assured, not only at the time the applications were signed but at the time the policies were issued and delivered by him, was in court during the trial and was not called upon to testify. To hold otherwise would

permit the insurance company to take advantage of the information which it had, to accept the premiums from the assured and retain them and then, upon the death of the assured, by the simple expedient of offering a written application not a part of the contract of insurance, avoid payment under the policies and thereby perpetrate a fraud upon the estate of the assured (see *Lampke* case, p. 165).

There can be no question in this case in regard to the authority of the agent. He was not merely a soliciting agent but, as Judge CARDOZO says in the *Bible* case, " he was that, but much besides. He was authorized not only to solicit applications, but to make delivery of the policies, and upon delivery and afterwards to collect the weekly premiums " (p. 463). Here, he was placed by the company in such a position as to enable him to perpetrate the fraud. As Judge HUBBS says in the *Lampke* case, " Repeatedly we have held that the knowledge of an agent with the authority of the agent here involved constitutes knowledge on the part of the company " (p. 165). Here, at the times the applications were signed, the assured was advised and was lulled into the belief that the agent had authority to bind the company through contracts of insurance which did not require him to be in good health at the respective dates of the policies. He was given no notice by the defendant to the contrary. The protection placed around such transactions by section 58 of the Insurance Law should not be relaxed.

The order of the Appellate Division should be reversed and the judgment of the Trial Term affirmed, with costs to the plaintiff in this court and in the Appellate Division.

CRANE, Ch. J., O'BRIEN and LOUGHRAN, JJ., concur with LEHMAN, J.; RIPPEY, J., dissents in opinion in which HUBBS and FINCH, JJ., concur.

Ordered accordingly.