Bergan, J.
The plaintiff, Otsego Aviation Service, Inc., was the owner of a Luscombe airplane on which a policy of aircraft hull insurance was issued by the Glens Falls Insurance Company September 9, 1946. This type of coverage roughly corresponds to motor vehicle collision insurance.
The issuance of the policy was negotiated for the insurance company by Alton G. Dunn who had a general insurance business in Cooperstown and who had represented the company for over twenty years. Mr. Dunn, however, was also a director of the plaintiff corporation and its vice-president. He owned one share of its stock.
There is no proof in the record that the insurance company then knew of the internal corporate relationship to its assured that had been assumed by its agent. The agent did not testify that he disclosed this relationship to the principal.
The policy as originally issued in September, 1946, provided that if the interest of the Otsego Aviation Service in the airplane became “ other than unconditional or sole ownership ” the entire policy should be void unless there was a specific indorsement to the contrary. It was further provided there could be no amendment and no waiver of any of the conditions of the policy without an agreement in writing and without approval of the Associated Aviation Underwriters.
On November 25, 1946, the company wrote an indorsement, retroactive to September 9th, in which it was recognized and agreed that the airplane was encumbered by a lien held by the Airbank of America and that any loss coming within the policy should be paid to plaintiff, or the owner of the lien, “ as their interests may appear ”. It is undisputed Airbank of America never acquired a lien or other interest in this airplane.
The airplane was sold two months later, on January 18, 1947, by the plaintiff to a group of six persons who are named in the action as the individual defendants, and to whom the airplane was then delivered. The sale was by a conditional sales contract. Four days later, on January 22,1947, the contract of sale was assigned by plaintiff to the Second National Bank of Cooperstown and the assignment provided that on default the plaintiff would repurchase the contract.
*615 The insurance company’s agent, Mr. Dunn, testified that he participated as officer of plaintiff in the arrangements for the sale of the plane to the six individual defendants; was present when the conditional sales contract was executed; knew its terms, and had complete knowledge and information of the plaintiff’s business operations and transactions.
On January 22, 1947, the date the conditional sales contract was assigned to the bank, Mr. Dunn wrote a letter to the Associated Aviation Underwriters which conducted the insurance company’s aviation business and whose approval was necessary for any amendment of the policy, stating that the Airbank of America, which had been described as having a lien in the indorsement of November 26th, never acquired a lien on the airplane and asking that a new indorsement be made. The new indorsement thus requested was to be “ everything the same only changing it to read Second National Bank of Cooperstown, N. Y. and Otsego Aviation Service, Inc. as their interests may appear.” This was signed by Mr. Dunn as agent.
On February 17, 1947, in response to this request an indorsement was written by the company by which it was understood and agreed that the company recognized that the described airplane was “ encumbered ” by a lien held by the Second National Bank of Cooperstown, N. Y., and that loss under the policy should be payable to the bank and the plaintiff ‘ ‘ as their interests may appear ”. It was expressly stated that “ All Other Terms and Conditions Remain Unchanged ”.
On April 24, 1947, the airplane was involved in a minor accident. A claim was made against the insurance company and paid. The proof of loss on this claim, made by plaintiff and signed by its president, contained a representation that at the time of this accident the airplane “ belonged exclusively to the undersigned ” and that there was no other interest in it outstanding.
On June 29, 1947, the airplane was involved in a second accident in which substantial damage was suffered. The insurance company disclaimed liability under its policy. This action upon the policy was tried at the Otsego Trial Term in 1948 before Mr. Justice Santry without a jury. In a careful opinion he reached the conclusion that decision should be for the insurance company and directed judgment in accordance with his views.
This loss does not fall within the contract as one reads its terms. The plaintiff, as conditional vendor, does not have the kind of title which the insurance company undertook to insure. *616 The policy was void, so the parties had agreed expressly, unless the plaintiff had “ unconditional or sole ” ownership.
The indorsement recognizing a lien of the Second National Bank changed this situation just as far as the words of the indorsement went, and no farther. The requirement of sole and unconditional ownership by the plaintiff was modified only to allow for a lien to the bank.
No reasonable man, reading the preceding indorsement under which plaintiff had sole title and the Airbank of America had a lien, and reading the request for indorsement to include the lien of the CooperstoAvn bank accompanied by a statement that other things were “ the same ”, would suppose that there could possibly be intended anything other than continued ownership and control of the airplane in the plaintiff and a lien in the bank.
The conditional sale to a group of other people Avith delivery and the right to control going to the conditional purchasers created an essentially changed kind of an insurance risk. An insurance company insuring an airplane has a reasonable right to know who will control its operation.
This is not a promiscuous kind of risk, or one in which mass statistics are a reliable guide. It is a selective kind of insurance business. At least an insurer ought to be advised adequately enough to make up his mind whether he would assume a new and different kind of undertaking. If there was to be a change, the parties had agreed that it must be expressed ‘1 in writing by endorsement ”. Here, certainly, was basic change.
Since the plaintiff cannot bring itself Avithin a literal coverage, the controlling question is whether the insurance company is deemed to have acquired such a knowledge of the true state of facts through its agent that it has either waived or is estopped from asserting as a defense that coverage is not Avithin the terms of the policy.
As it has been seen, the record does not show that the agent advised the principal that the airplane had been sold by the plaintiff under a conditional sales contract and that possession and control had passed into other hands; and there is no proof that the insurance company knew of this fact until after the second accident.
The agent felt that the retention of the reserved title by the plaintiff in the conditional sales contract actually continued the plaintiff in the status of sole and unconditional ownership within the policy. A man has a right to hold unorthodox views of law, but when he acts upon them he does so at the risk that other people Avill guide themselves by the usual standards.
*617 It would be the common view of most business men, even without legal advice, that a conditional seller could not insure his interest as an “ unconditional ” or “ sole ” owner, and this insurance company, not being told what the facts were, was justified in thinking that plaintiff had not parted with the kind of title which carries control with it.
As far as an insurable interest goes there is marked similarity between a conditional seller and a mortgagee. The debtor in either case controls the thing insured. He can keep control by performing his part of the contract, and full payment of the debt gives him an indefeasible claim to full title.
Insurance companies sometimes find themselves in a position where defenses that might be good enough if the written language of the policy alone were considered are held to be waived. McClelland v. Mutual Life Ins. Co. (217 N. Y. 336) is an example of this. An agent had apparent authority to deliver a policy of life insurance and accept a first premium. The application provided that the policy should not take effect unless the policy had been delivered and the first premium should have been paid “ during my continuance in good health ”.
Knowing that the assured was at home ill from 1‘ a cold and grippe ”, the agent nevertheless delivered the policy at assured’s office and received the first premium. From a sequel of that illness the assured died. The literal defense under the policy was not allowed because the agent’s knowledge and his acts were deemed a waiver by the company. Compare Ames v. Manhattan Life Ins. Co. (40 App. Div. 465, affd. 167 N. Y. 584) which is very similar in its factual pattern.
The insurance agent’s knowledge of the liquor dealer’s business,. considered to be a sufficient factual basis to find waiver and to support a verdict against the insurer in Kenyon v. Knights Templar & Masonic Mut. Aid Assn. (122 N. Y. 247) is in a similar direction.
Sometimes the acts of agents are more narrowly construéd on the effect "of notice to them of material facts. Thus, when an application provided that the policy of life insurance should not be effective until the policy was delivered and the first premium paid while the assured was in good health, the delivery of the policy to the assured by the agent knowing his illness and the advancement, by agreement with the assured, of the amount of the premium by the agent as a loan to the assured, and its payment to the company by the agent, were held to be no waiver. (Drilling v. New York Life Ins. Co., 234 N. Y. 234.) The narrow ground of distinction was that in the loan part of the arrange- *618 meat by which the money for the premium was advanced by the insurance agent she was acting as agent for the assured and not for the company.
The operation of the rule against imputation of the knowledge of an agent to an insurance company as constituting a waiver is especially to be noted where there is fraud and an acquiescence in the fraud by the agent. On this branch of the subject see McCormack v. Security Mut. Life Ins. Co. (220 N. Y. 447) and Henry v. Allen (151 N. Y. 1).
The important thing about the case in hand, however, is not fraud or the authority of the agent. It is the fact that when an agent undertakes to act in a transaction for two parties whose interests are or can become adverse, as a reasonable man might foresee, knowledge of facts arising from the transaction is not deemed the knowledge of the principal to operate as a waiver or to work otherwise to his detriment, unless the principal has actual and not merely constructive knowledge of the true facts.
The fiduciary responsibility of an agent requires him to disclose to the principal any adverse interest which would influence judgment. (Beatty v. Guggenheim Exploration Co., 223 N. Y. 294, 304; see, also, Keller v. American Chain Co., 255 N. Y. 94.) An adverse personal interest, as where the agent attempted himself to purchase a part of his principal’s property entrusted to him for sale, has usually been treated as entirely void.
Thus, the attempt by the agent, having general authority to sell, to purchase for himself a share of the brig Joseph while on a voyage to Montevideo, was regarded by the Supreme Judicial Court of Massachusetts to be invalid and to convey no title. (Copeland v. Mercantile Ins. Co., 23 Mass. 197.) Chancellor Walworth, upon similar grounds laid down a prohibition against the acquisition of a personal interest in trust property by the purchase of a trustee in Van Epps v. Van Epps (9 Paige Ch. 237).
When an agent serves dual interests he occupies a field of extremely delicate relationships. Where one of two parties served knows all the facts and the other knows only a part of them, it would be unreasonable by constructive imputation to charge the partially informed with a full knowledge.
A good illustration of this principal is to be observed rather early in the history of the Court of Appeals in New York Central Ins. Co. v. National Protection Ins. Co. (14 N. Y. 85) decided in *619 1856. An agent had undertaken to act for two insurance companies in respect of reinsurance, a relationship which Chief Judge Denio regarded as having “ a manifest inconsistency ” (p. 92). The contract was treated as one subject to the dis-affirmation of the insurer sued under the policy. In the same direction is Empire State Ins. Co. v. American Central Ins. Co. (138 N. Y. 446) decided in 1893.
A comprehensive statement of the principle and its development is to be found in the opinion of the Onondaga General Term in Utica Ins. Co. v. Toledo Ins. Co. (17 Barb. 132) where the agent writing a policy had acted for both parties.
That the rule is one of quite general recognition is suggested by the collation of authority in many States in Corpus Juris Secundum (Yol. 3, Agency, p. 9, § 139) where the summary is that “ An agent cannot properly possess any individual interests or represent interests adverse to those of his principal in transactions which involve the subject matter of the agency, without the full knowledge and consent of his principal.”
The reasons why the principal is not charged with constructive notice of the facts known to his agent in such a situation are discussed by Judge Haight in Benedict v. Arnoux (154 N. Y. 715). The presumption of communication upon which the imputation of knowledge is based “ no longer prevails ” (p. 728).
The Restatement of the Law of Agency (§ 279) makes a synthesis of the point: “ The principal is not affected by the knowledge of an agent as to matters involved in a transaction in which the agent deals with the principal * * * as, or on account of, an adverse party.”
To identical effect are the statement and collation of authority in Corpus Juris Secundum (Vol. 3, Agency, p. 202, § 269). The question is considered in part of the decision in Drilling v. New York Life Ins. Co. (234 N. Y. 234, 240, supra).
New York Mut. Sav. & Loan Assn. v. Westchester Fire Ins. Co. (110 App. Div. 760, affd. 189 N. Y. 525 without opinion on stipulation for judgment absolute) seems to be against the main current of authority. In the Appellate Division, at least, the chief concern was with the knowledge of the agent that the insured premises were vacant and unoccupied as constituting a waiver of a fire insurance policy provision that coverage would not exist under certain conditions of nonoccupancy. There was a casual reference and summary disposal in the opinion of the agent’s interest in the assured for which he was also the renting agent (p. 766).
*620 We reach the conclusion that the knowledge of the insurance company’s agent here of the sale of the airplane to other parties is not to be attributed constructively to the insurance company because of the agent’s interest and participation in the transaction on behalf of the assured; and that since there is no proof that the true facts were actually communicated to the insurer it is not estopped by any principle of waiver or otherwise from asserting the defense afforded by the literal terms of its policy.
The circuit of assignment from the plaintiff to the bank to the plaintiff does not alter or strengthen the plaintiff’s position.
The judgment should be affirmed, with costs.
Foster, P. J., Hefferbab, Brewster and Deyo, JJ., concur.
Judgment affirmed, with costs.