Cooke, J.
 

 On May 9, 1968, Arnold Krakower, an attorney, completed an application for a policy of term life insurance in the amount of $40,000 and submitted that application to the Mutual Life Insurance Company of New York (MONY). Mr. Krakower declared himself to be in good health, regularly performing the duties of his occupation in the usual manner. He further declared that during the five years previous he in no way curtailed his duties because of bad health and, to the best of his knowledge had no health impairment. In response to the question, "During the past 5 years have you consulted any physician or other practitioner, been hospitalized or had a surgical operation?” he replied in the affirmative and provided the following required detail "Ann[ual] checkups—colds & virus—complete recovery.”
 

 A requisite physical examination was given Mr. Krakower on June 27, 1968 at which time he was again confronted with
 
 *709
 
 a series of printed questions pertaining to his health, questions designed to elicit information as to specific disorders, illnesses and injuries. Mr. Krakower admitted to surgery for a hernia and a tonsillectomy in childhood, an appendectomy in 1925, a stay in Mt. Sinai Hospital for a cholecystomy in 1952, a routine EKG in the early 1960’s, nonrecurring low back pain in 1962, and a 1967 visit to his physician for a cold innoculation. To all other questions he gave negative responses, thus indicating that he had never had any known indication of, or received treatment for, the other enumerated or referred to conditions. He also denied being under medication during the previous year. At the top of the first page of the two-page medical report on which all these answers were recorded appeared the following printed heading: "Forming Part of Application To The MUTUAL Life Insurance Company OF NEW YORK”. At the foot of that application and directly above Mr. Krakower’s signature, was a representation that the statements and answers in this portion of the application, as well as in other parts, were true and complete.
 

 In addition to seeking insurance on his own life, Mr. Krakower applied for $5,000 in term insurance on the life of his wife. The application for that coverage, completed on May 9, 1968, contained four questions of substance, all directed at obtaining information about the health of Mrs. Krakower. The responses given indicated that Mrs. Krakower had no health impairments and had consulted a physician during the previous five years for annual checkups, colds and viruses and had effected a complete recovery.
 

 The policy sought was issued on June 27, 1968. Appended to that policy were the two applications relating to the life of Mr. Krakower as well as the single application for insurance on the life of his wife. Within the one-year contestability period of the policy, Arnold Krakower died from complications arising from polycythemia vera, a blood disease with which he had suffered for the past 20 years.
 

 Investigations by the insurance company disclosed that in June of 1968, as well as on seven prior occasions, Mr. Krakower had been hospitalized for polycythemia and conditions relating thereto. Polycythemia vera is defined in the record as "A disease marked by a persistent increase of the red blood corpuscles due to excessive formation of erythroblasts by the bone marrow. It is accompanied by increased thickness of the blood, and enlargement of the spleen. The disease extends
 
 *710
 
 over many years and gradually causes death by complications.”
 

 Contrary to the medical history given on the application of June 27, 1968, Mr. Krakower’s hospital records revealed the onset of polycythemia in 1947 and reflected periods of intensive care and treatment for the condition including the period from 1960 through 1965. In 1965, the condition stabilized, but worsened again in March of 1968. It was during this time, the spring of 1968, that Mr. Krakower applied for the insurance coverage here in dispute. In fact, two weeks prior to the insurance physical of June 27, 1968, he had been hospitalized and treated for complications arising from the blood condition.
 

 Mr. Krakower’s widow filed a claim with MONY. The latter, after receiving the results of the investigation as noted above, refused payment. Instead MONY sent notice to Mrs. Krakower of its intention to rescind the policy because of the decedent’s misrepresentation in his application and followed that notice with tender of a check in the amount of $644.66 which included return of payments made on the policy and interest thereon. The check was rejected and this action for $40,000 ensued.
 

 Motions made at Special Term for summary judgment were denied. While the court acknowledged that the validity of the policy had been timely contested and that the facts concealed by the decedent had been material, it questioned the legibility and thus the admissibility under section 142 of the Insurance Law of the representations of decedent as they appeared on the copies of the application for insurance appended to decedent’s copy of the policy. Viewing the question of legibility as one of fact for a jury, the summary judgment motions were denied and the case referred for trial on that single issue.
 

 At trial the issue was narrowed even further, as plaintiff’s counsel stipulated as to the legibility of the copies of the two applications pertaining to the life of Mr. Krakower, marked as plaintiff’s exhibits "IB” and "1C”. Thus, the only question presented to the jury was whether the copy of the application on the wife’s life, marked as plaintiff’s exhibit "1A”, was legible. The jury found that it was not.
 

 Although the trial court accepted this finding, it went further by correctly redefining the issue in the case as whether the illegibility of the copy of the application for insurance on the life of Mr. Krakower’s widow should prevent the insurance company from demonstrating the falsity of Mr.
 
 *711
 
 Krakower’s application. And, once so defined, that court determined subdivision 1 of section 142 of the Insurance Law to be no bar and found defendant entitled to judgment dismissing the complaint. The Appellate Division reversed, holding that section 142 rendered inadmissible decedent’s application. That reversal brought the case before this tribunal which now unanimously reverses that latter determination and orders the reinstatement of the order of the trial court.
 

 Section 142 of the Insurance Law derives from former section 58 and, in subdivision 1, provides as follows: "1. Every policy of life, accident or health insurance, or contract of annuity, delivered or issued for delivery in this state shall contain the entire contract between the parties, and nothing shall be incorporated therein by reference to any constitution, by-laws, rules, application, or other writings, unless a copy thereof is endorsed upon or attached to the policy or contract when issued. No application for the issuance of any such policy or contract shall be admissible in evidence unless a true copy of such application was attached to such policy when issued.”
 

 It is clear that this section is directed toward the protection of the insured or his or her beneficiary by providing the insured with the opportunity to examine those writings, including applications, that may be relevant to the policy and, particularly in the case of applications, affording an opportunity to correct any incorrect statements therein
 
 (Cutler v Hartford Life Ins. Co.,
 
 22 NY2d 245, 252;
 
 Helfaer v John Hancock Mut. Life Ins. Co.,
 
 51 Misc 2d 869, revd 30 AD2d 102, revd 26 NY2d 699). In order for this opportunity to be meaningful, it is beyond question that the copies provided the insured be legible (1 Couch, Insurance 2d, § 4:18; see
 
 Arter v Northwestern Mut. Life Ins. Co.,
 
 130 F 768;
 
 New York Life Ins. Co. v Halpern,
 
 57 F2d 200, 204, affd 61 F2d 1037;
 
 New York Life Ins. Co. v Miller,
 
 73 F2d 350, 355-356).
 

 In this case the challenge is not made under the first sentence of subdivision 1 of section 142. Rather, it is the second sentence, the sentence governing the admissibility into evidence, on which the respondent relies. That sentence was not part of the former section 58, nor did it appear in section 142 as originally enacted (L 1939, ch 882). It was added in 1940 (L 1940, ch 94) and is a clear example of legislative repeal of court-made law. The case which triggered the legislative action was
 
 Abbott v Prudential Ins. Co.
 
 (281 NY 375)
 
 *712
 
 where this court, though acknowledging that no part of the application had been attached to the policy as required by former section 58, nevertheless held the application admissible to prove that the insured knew of the limitation of the agent’s authority. Recognizing this result as antithetical to the intent of section 142, the Legislature added the second sentence, to assure that "[n]o application for the issuance of any such policy * * * shall be admissible in evidence unless a true copy of such application was attached to such policy when issued.”
 

 Here, the insurer has sought to introduce the applications for insurance on the life of Mr. Krakower, the copies of which were conceded to be true and legible copies, but would be barred by the Appellate Division because of the illegibility of the copy of the application for the coverage of his widow. Although attached to the same policy, under these circumstances and for this particular purpose, the applications which relate to different lives, separate coverage and distinct risks, must be viewed as they were by the trial court, as separate and distinct. Thus, in this situation, the second sentence of section 142 should not be applied to render inadmissible the husband’s applications for insurance. On these facts, to hold otherwise would be a misapplication of the statute.
 

 The order of the Appellate Division should be reversed and the order and the judgment of the Supreme Court, Trial Term, reinstated with costs in all courts.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
 

 Order reversed, etc.