OPINION OF THE COURT
Elliott Golden, J.
In this action to recover $1,200,000 in insurance proceeds (or as damages) under two life insurance policies issued by defendant Maccabees Life Insurance Company (hereinafter Maccabees) on plaintiff’s deceased husband’s life, plaintiff moves pursuant to CPLR 3212 (e) for partial summary judgment with respect to one of these policies in the amount of $700,000. Defendant Maccabees cross-moves and defendant Bertram Jagust separately moves for summary judgment dismissal of the complaint as against each of them.
Plaintiff’s husband died on July 12, 1989. As his beneficiary under the two life insurance policies, plaintiff filed a claim with Maccabees. By letter dated December 28, 1989, the insurance company notified plaintiff that in the course of evaluating her claim, Maccabees discovered that her husband had a long-standing history of diabetes and coronary artery disease but that in his application he falsely answered "no” when asked if he ever had or had been treated for said conditions. Regarding these responses as material misrepresentations and positing that it would not have issued the insurance policies on the decedent’s life if it had been aware of the correct information as to his medical history, the insurance company refused to honor plaintiff’s claim, rescinded the policies and refunded all premiums paid.
In July 1990, plaintiff commenced this action by the service of a summons and complaint. The complaint contains four causes of action. The first cause, asserted against Maccabees alone, seeks recovery of $1,000,000 in life insurance proceeds based on the two policies in the sums of $700,000 and $300,000, respectively. The second cause of action, also alleged only against Maccabees, seeks to recover an additional $200,000 of increased insurance coverage on the husband’s life. The third claim for $1,200,000, directed against both defendants, alleges upon information and belief that defendant Jagust, as *995 an insurance agent for Maccabees, improperly advised the decedent to not disclose certain information regarding his medical history. This third cause further asserts that Maccabees failed to ensure that its agent Jagust completed the application in a full and complete manner. The fourth cause of action, addressed only to Jagust, also avers on information and belief a breach of duty by him with respect to the completion of the life insurance application and requests $1,200,000 in damages.
Plaintiff, in her attorney’s affirmation in opposition to Maccabees’ cross motion, has withdrawn (1) that portion of the first cause of action in the complaint that seeks the proceeds from the $300,000 policy and (2) the claims against Maccabees in the third cause of action. This leaves for the court’s consideration the proceeds of the $700,000 policy (first cause of action), the proceeds from the $200,000 increase in coverage (second cause) and the $1,200,000 damage claims against Jagust in the third and fourth causes of action.
With regard to the $700,000 insurance policy, plaintiff does not dispute the misrepresentations contained in the application or their materiality, but argues instead that because a "true copy” of the application was not attached to the policy when it was issued to him, any statements (i.e., the misrepresentations) contained in the application are inadmissible pursuant to Insurance Law § 3204 (a) (2) and, consequently, there was no basis upon which Maccabees could disclaim coverage or rescind the policy.
Plaintiffs argument is predicated upon the fact that the application annexed to the $700,000 policy was not signed by the insured. The reason why it was unsigned is that the original application, which was purportedly signed and executed on May 5, 1988 in Connecticut by both the plaintiff as applicant/owner and her husband as the proposed insured, was completed on a form approved for use in New Jersey but not in Connecticut. As a consequence, an employee of the insurance company then transcribed the information contained in the New Jersey application form, including all of the misrepresentations about the decedent’s health record and medical history, onto a Connecticut application form which had been approved for use in that State. A photocopy of this unsigned transcribed Connecticut application was then attached to the $700,000 insurance policy issued to the decedent. A second photocopy of the unsigned Connecticut application was subsequently signed by the plaintiff and her husband and *996 this signed copy was attached to the $300,000 policy which had been applied for in June 1988, the proceeds from which policy the plaintiff has now renounced.
The resolution of this issue as to whether an unsigned application is admissible into evidence requires the court to first determine which State’s law should be applied under conflicts of law principles — i.e., Connecticut, New Jersey or New York — since each of these States had some involvement in the issuance of the $700,000 policy. New York’s rule, which has come to be called the "grouping of contacts” theory, is to follow the law of the jurisdiction which has the most significant contacts with the matter in dispute (Auten v Auten, 308 NY 155, 160; Fleet Messenger Serv. v Life Ins. Co., 315 F2d 593, 596 [2d Cir]; McGinniss v Employers Reins. Corp., 648 F Supp 1263, 1267 [SD NY]). The relevant contacts herein would be the residency of the insured and of the beneficiary, the place where the contract was made, where the policy was issued or delivered to the insured, and where Maccabees is licensed to do business (Fleet Messenger Serv. v Life Ins. Co., supra, at 596; McGinniss v Employers Reins. Corp., supra, at 1267).
The original application was allegedly executed in Connecticut although the plaintiff denies ever having been in Connecticut for that purpose. In any event, the court finds that the Connecticut contact is fortuitous, and no one contends that the law of that State should control (Fleet Messenger Serv. v Life Ins. Co., supra, at 596).
In choosing between New York and New Jersey as the choice of law forum, the significant contacts are in dispute. Plaintiff and her late husband maintained residences in both States, although the decedent’s New Jersey address appears on the application and the same New Jersey address can also be found on the plaintiff’s beneficiary claim form. Defendant Jagust states that the $700,000 policy was delivered to the decedent at either his New Jersey residence or at his office in New York, while plaintiff avers that Jagust did not visit them in New Jersey during her husband’s lifetime.
Resolution of these facts relevant to the proper choice of law is unnecessary, however, since the court finds that the result would be the same under either the law of New Jersey or New York. The applicable statutory provisions in each State are almost identical, to wit:
New Jersey Statutes Annotated § 17B:24-3 (a), "No applica *997 tian for any life * * * insurance policy * * * shall be admissible in evidence in any action relative to such policy * * * unless a copy of the application was attached to or endorsed upon the policy * * * when issued.”
New York Insurance Law § 3204 (a) (2), "No application for the issuance of any such [life insurance] policy * * * shall be admissible in evidence unless a true copy [of the application] was attached to such policy * * * when issued.”
While the New Jersey statute refers to a "copy” and the New York statute uses the term "true copy”, the court finds this to be a distinction without any significant difference for purposes of deciding the admissibility of the misrepresentations under these statutory provisos. Black’s Law Dictionary (6th ed) defines "copy” as "[a] transcript, double, imitation, or reproduction of an original writing” (at 336) and construes a "true copy” by stating that "A true copy does not mean an absolutely exact copy but means that the copy shall be so true that anybody can understand it” (at 1508). Certainly, in this case, the transcribed copy of the application is a reproduction of the original application which can be understood by the insured as though it were the original.
The more critical question is whether the absence of the insured’s signature from the transcribed copy makes it any less a "copy” or "true copy” for purposes of satisfying these sections. Neither statute explicitly requires that the copy of the application which is annexed to the policy be signed and no reported case has been found in either State which has addressed this issue. There is, however, a decision rendered by a State court in Connecticut which interpreted the law in New York as not requiring that the copy of the application attached to the policy be signed in order for the application to be admissible into evidence (New York Life Ins. Co. v Rigas, 117 Conn 437, 168 A 22, 24). In addition, Maccabees cites decisions from several other jurisdictions which have held that a signed application is not necessary (Ives v INA Life Ins. Co., 101 Ore App 429, 790 P2d 1206, 1208-1209; Lindley v Franklin Fire Ins. Co., 137 Tex 196, 152 SW2d 1109,1111).
These holdings are consistent with the purpose and intent of statutes like the two involved herein. "The requirement that a 'copy’ of the application be attached to the issued policy insures that the policyholder is provided with everything that the insurer relies on in issuing the policy, i.e., the entire agreement of the parties” (Ives v INA Life Ins. Co., supra, 101 *998 Ore App, at 433, 790 P2d, at 1208 [emphasis supplied]; Evans v United Life & Acc. Ins. Co., 871 F2d 466, 470). The insured is then presented with the opportunity and, in fact, a duty to read it or have it read, and if the application does not contain true answers to the questions asked, it is his further duty to have them correct it (Minsker v John Hancock Mut. Life Ins. Co., 254 NY 333, 338; Gozan v Mutual Life Ins. Co., 40 NY2d 707, 711; North Atl. Life Ins. Co. v Katz, 163 AD2d 283, 284-285; New York Life Ins. Co. v Rigas, supra, 168 A, at 24; Daly v Paul Revere Variable Annuity Ins. Co., 199 NJ Super 584, 489 A2d 1279, 1284, affd 206 NJ Super 185, 502 A2d 48; Zachary Trading v Northwestern Mut. Life Ins. Co., 668 F Supp 343, 346 [SD NY]). This is to protect the insured from possible loss of insurance after many years of premium payments by affording him the opportunity at the inception of the coverage to make corrections of information which might nullify the supposed insurance protection (Cutler v Hartford Life Ins. Co., 22 NY2d 245, 250-251; Tannenbaum v Provident Mut. Life Ins. Co., 53 AD2d 86, 105, affd 41 NY2d 1087).
In this case, in the absence of any contrary authority in New Jersey or New York and under the circumstances presented herein in which the insured had signed an application containing the identical information both prior to and after receiving the $700,000 policy with the transcribed unsigned application annexed thereto, the court finds that this unsigned application constituted a sufficient "copy” or "true copy” for the purposes of satisfying the statutory prerequisite to the admissibility into evidence of the application containing the misrepresentations. The insured should not be allowed to have remained silent while cognizant, or he should have been made so aware by reading the application, that the application includes false information.
The plaintiff’s argument with regard to the $700,000 insurance policy on her husband’s life is, therefore, rejected and under the laws of both New Jersey and New York, Maccabees was justified on the basis of the material misrepresentations set forth in the application to rescind the policy and disclaim coverage (see, e.g., Daly v Paul Revere Variable Annuity Ins. Co., supra, 489 A2d, at 1285; North Atl. Life Ins. Co. v Katz, supra, 163 AD2d, at 285).
The second cause of action seeks recovery of an additional $200,000 of life insurance representing increases in coverage which Maccabees offered the insured (which he accepted) in letters dated April 20 and April 25, 1989. As these letters *999 make clear, the insurance company agreed, on the basis of the insured’s "good health record”, to increase the face amount of the $700,000 policy to $840,000 (an increase of $140,000) and the $300,000 policy to $360,000 (an increase of $60,000) at additional premiums. The increases did not constitute separate new policies but were merely additions to the already existing two policies, which increased amounts were being offered to the insured on the basis of the representations (i.e., the misrepresentations) in his applications for said insurance.
The collectability of these increased proceeds by the plaintiff therefore depends on the determinations made with regard to the underlying policies to which the increases attached. Since the plaintiff has abandoned her claim to the $300,000 policy and has just been denied the proceeds of the $700,000 policy, she is likewise denied any right to the increased coverage proceeds totaling $200,000.
Accordingly, as to the plaintiff’s claims against Maccabees, the plaintiff’s motion for summary judgment seeking recovery of the $700,000 policy proceeds is denied, and Maccabees’ cross motion seeking dismissal of the entire complaint against it is granted. In view of this dismissal, Maccabees’ third-party action is also dismissed.
Turning now to the motion of defendant Jagust for summary judgment dismissal of the complaint against him, the allegations in the third and fourth causes of action are that Jagust, as the insurance agent who procured the subject life insurance for the decedent, advised him not to disclose in the application certain information regarding his medical history, thereby breaching a duty of care he owed to decedent to properly counsel him on an accurate completion of the application. It is further alleged that Jagust knew that the decedent had suffered from various medical problems including heart disease and diabetes. Jagust, in his affidavit, denies both of these allegations, which the plaintiff disputes insofar as to whether Jagust had prior knowledge of decedent’s medical condition.
It is plaintiff’s position, however, that she is unable to come forward at this time with evidence in admissible form showing that Jagust knew of the decedent’s medical history at the time the application was filled out, and requests that a determination of the instant motion be deferred until Jagust’s deposition *1000 has been taken. The court concurs (CPLR 3212 [f]; Government Empls. Ins. Co. v Desiderio, 104 AD2d 791).
Accordingly, Jagust’s motion for summary judgment is denied, without prejudice to a renewal of the motion after completion of his examination before trial.