MASSACHUSETTS CASUALTY
INSURANCE CO., Plaintiff,

v.

Thomas MORGAN III, Defendant.

No. CV–94–5871 (CPS).

United States District Court,
E.D. New York.

May 18, 1995.

Michael Yoeli, Gordon & Silber, P.C., New York City, for plaintiff.

Mark Scherzer, New York City, for defendant.

## MEMORANDUM AND ORDER

SIFTON, Chief Judge.

This is a diversity action brought by an insurer for rescission of an insurance contract based on alleged misrepresentation by the insured. Defendant has moved for summary judgment, and plaintiff has opposed this motion and filed a cross-motion to amend its complaint to add a new claim for relief. For the reasons set forth below, both motions are granted.

## BACKGROUND

This case involves a disability insurance policy purchased by defendant Thomas Morgan III ("Morgan") from plaintiff Massachusetts Casualty Insurance Company ("Massachusetts Casualty"). The following facts are taken from the initial complaint, from the affidavits of counsel, and from the various Rule 3(g) statements filed in this matter and are essentially undisputed as they bear on these motions.[1]

In April 1988 defendant Morgan tested positive for HIV infection. He was diagnosed with Acquired Immune Deficiency Syndrome ("AIDS") in August 1990 and has been treated with AZT since August 1991.

On May 27, 1988, Morgan applied for individual disability income insurance from Massachusetts Casualty. In the application, Morgan indicated that he had recently been seen by a physician but did not explain the purpose of the visit or disclose the positive test for HIV infection. In July of 1988, Massachusetts Casualty issued the policy.

On October 22, 1992, Morgan's policy lapsed for nonpayment. Massachusetts Casualty required Morgan to file an application for reinstatement, which Morgan returned with payment on December 17, 1992. As part of the application for reinstatement, Morgan signed a declaration that (1) he was in the same status or condition of health as indicated in his original application and (2) since the date of the issuance of the policy he had suffered no injuries, ailments or illnesses and had not been sick from any cause, had not been consulted or been prescribed for or attended by a physician or practitioner for any cause and had not been hospitalized.[2] Massachusetts Casualty thereafter reinstated the policy.

On July 22, 1994, defendant submitted a claim for benefits under the policy, claiming disability due to AIDS. Morgan claimed that as of July 1994 his illness rendered him unable to continue to work. In the course of evaluating Morgan's claim, Massachusetts Casualty learned about Morgan's August 1990 AIDS diagnosis and subsequent treatment. While its investigation and evaluation were pending, Massachusetts Casualty made an initial payment of $3,000 under the policy.

On October 20, 1994, Massachusetts Casualty informed Morgan that it was investigating the possibility that he had made misrepresentations in his reinstatement application and that it was withholding further benefits while it continued its investigation. Shortly thereafter, on October 26, 1994, Morgan, through his attorney, requested a copy of the reinstatement application. Plaintiff did not provide this requested copy until February

---

1. Although plaintiff does not appear to be cross-moving for summary judgment, it has filed a "statement of undisputed material facts" along with its opposition papers. In his reply papers, defendant has submitted a second Rule 3(g) statement, disputing facts set forth by the plaintiff. Because defendant's motion for summary judgment on the original claim for relief turns on an issue of law, the facts that are in dispute are not material to the disposition of the original claim for relief.

2. This description of the declaration is summarized from the affidavit of Michael Yoeli, counsel to the plaintiff. While a copy of the reinstatement application is annexed to this affidavit as Exhibit B, the declaration is virtually illegible.

10, 1995, in its opposition to the instant motion. On November 15, 1994, Massachusetts Casualty sent a letter to defendant reserving its rights to rescind the contract and returned all premiums paid since the reinstatement date. On December 21, 1994, plaintiff commenced this action to rescind the contract on the ground that the reinstatement was based on false representations by the defendant.

Defendant now moves for summary judgment in his favor, arguing that plaintiff's alleged failure to comply with New York Insurance Law § 3204(e) compels judgment in his favor.

Section 3204(e) provides as follows:

> If any policy of life, accident and health insurance delivered or issued for delivery in this state is reinstated or renewed ... and the insured or the beneficiary or assignee of such policy makes written request to the insurer for a copy of the application, if any, for such reinstatement or renewal, ... the insurer shall, within fifteen days after the receipt of such request at its home office or any branch office of the insurer, deliver or mail to the person making such request, a copy of such application or notice. If such copy is not delivered or mailed, the insurer shall be precluded from introducing such application or notice as evidence in any action or proceeding based upon or involving such policy or its reinstatement, renewal or change.

It is undisputed that Massachusetts Casualty did not provide the reinstatement application within fifteen days of defendant's request. Massachusetts Casualty, however, contends that this statute does not apply after an insurer has given notice of its intent to investigate a claim. Additionally, the insurer cross-moves for leave to amend its complaint to add a second cause of action.

## DISCUSSION

Summary judgment must be granted if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any disputed material facts, *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990), and the court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Id.* Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The showing needed on summary judgment reflects the burden of proof in the underlying action. The court must examine "the actual quantum and quality of proof" demanded by the underlying cause of action and consider which party is required to present such proof in the particular action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Where the ultimate burden of proof is on the nonmoving party, the moving party meets his initial burden for summary judgment by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). To survive the motion, the nonmoving party must then "make a showing sufficient to establish the existence of [the challenged] element essential to [that party's] case." *Id.* at 322, 106 S.Ct. at 2552. In deciding a motion for summary judgment, ambiguities are to be resolved against the moving party. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11 (citing *Adickes v. S.H. Kress & Co., Inc.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)).

As an initial matter, both sides agree that New York law governs this lawsuit. Under *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), this Court applies New York's choice of law rules, and New York looks to the law of the jurisdiction with the most significant contacts to the matter in dispute. *Olin Corp. v. Insurance Co. of North America*, 743 F.Supp. 1044, 1048–49 (S.D.N.Y. 1990), *aff'd*, 929 F.2d 62 (2d Cir.1991); *see*

*also Hidary v. Maccabees Life Ins. Co.,* 155 Misc.2d 993, 591 N.Y.S.2d 706, 708–09 (N.Y.Sup.1992). When insurance contracts are involved, New York courts look to factors such as the location of the insured, the insurer's place of business, where the policy was issued and delivered, where the issuing broker is located, and where the premiums were paid. *Olin Corp.,* 743 F.Supp. at 1049. Here, it is undisputed that the insured is a New York resident and that the policy was delivered in New York. The only non-New York contact is the location of the insurer, and courts have applied New York law to out-of-state insurers when other factors point towards the use of New York law.[3]  *Id.*

■ Section 3204(e) of New York's Insurance Law applies to disability policies. The statute refers to "any policy of life, accident and health insurance delivered or issued for delivery in this state." N.Y.Insur.Law § 1113(a)(3), which describes "[t]he kinds of insurance which may be authorized in this state," specifically defines "[a]ccident and health insurance" to include "non-cancelable disability insurance, meaning insurance against disability resulting from sickness, ailment or bodily injury ... under any contract which does not give the insurer the option to cancel or otherwise terminate the contract at or after one year from its effective date or renewal date." N.Y.Insur.Law § 1113(a)(3). Section 3201, discussing approval of "life, accident and health, and annuity policy forms," refers to § 1113 to define the policies covered by that section. In context, it is clear that the phrase "accident and health insurance" used in § 3204(e) has the meaning set forth in § 1113(a)(3). Moreover, the statutory predecessor to § 3204, Insurance Law § 142, has been applied to disability policies. *Mutual Life Ins. Co. of New York v. Hayden,* 87 Misc.2d 1039, 386 N.Y.S.2d 978, 980–81 (N.Y.Sup.1976). Plaintiff does not contend that disability policies are excluded from the coverage of § 3204.

Since New York Insurance Law § 3204(e) covers the policy at issue here, the next question is whether the preclusive effect of that statute should be applied in this case.[4]

Defendant argues that § 3204(e) should be applied as it is written and, thus, that plaintiff should be precluded from the use of the reinstatement application. Without this application, the plaintiff could not prove any misrepresentations, and thus summary judgment in defendant's favor is warranted. Plaintiff argues that the preclusion imposed by a violation of § 3204(e) does not apply to the instant case, where an insured requests a copy of his application after premiums had been paid, a benefits claim had been filed, an investigation had commenced, and an adversarial stance had been assumed.

■ Neither the parties nor the Court has been able to find any case law construing, interpreting, or even applying this particular subsection of the Insurance Law. Several cases have applied § 3204(a), however, and in interpreting § 3204(e), consideration of § 3204(a) is appropriate. It is true that the New York Court of Appeals generally "will not add words to a statute which has a rational meaning as written," *Richmond Constructors v. Tishelman,* 61 N.Y.2d 1, 6, 471 N.Y.S.2d 58, 60, 459 N.E.2d 167, 169 (1983), *rearg. den.,* 61 N.Y.2d 905, 474 N.Y.S.2d 1027, 462 N.E.2d 1205 (1984), and that unambiguous statutes should be interpreted according to their plain meaning, avoiding any artificial or forced construction, *Schmidt on Behalf of McNell v. Roberts,* 74 N.Y.2d 513, 520, 549 N.Y.S.2d 633, 637, 548 N.E.2d 1284, 1288 (1989); nevertheless, the Court should not always find apparent clarity determinative of an issue of construction and should avoid a literal interpretation when to do so would result in injustice or absurdity, *see Zappone v. Home Ins. Co.,* 55 N.Y.2d 131, 137, 447 N.Y.S.2d 911, 914, 432 N.E.2d 783, 786 (1982). "Generally, inquiry must be made of the spirit and purpose of the legisla-

---

3. Assuming New York law to apply, this Court is bound to interpret the law as would the highest court of the state. *Stafford v. International Harvester, Co.,* 668 F.2d 142, 148 (2d Cir.1981); *Bank of New York v. Amoco Oil Co.,* 35 F.3d 643, 650 (2d Cir.1994).

4. Defendant notes that § 3204(e) presents an issue of contractual interpretation, and thus is a substantive rule similar to the parol evidence rule which is not pre-empted by the Federal Rules of Evidence. Plaintiff has not challenged this position.

tion, which requires examination of the statutory context of the provision as well as its legislative history." *Sutka v. Conners,* 73 N.Y.2d 395, 403, 541 N.Y.S.2d 191, 194, 538 N.E.2d 1012, 1015 (1991). Section 3204(a) thus will provide necessary insight into the context within which § 3204(e) is to be read.

Section 3204(a) derives from Section 58 of the Insurance Law of 1909, which required that the insurance policy contain the entire contract between the parties. "The purpose of section 58 of the Insurance Law in requiring the whole contract to be stated in the policies, and not pieced out by documents included by mere reference, was not the relief of the insurer. It was the protection of those insured and of the beneficiaries claiming under them." *See Bible v. John Hancock Mut. Life Ins. Co.,* 256 N.Y. 458, 464, 176 N.E. 838 (1931). In 1939, the Court of Appeals decided in *Abbott v. Prudential Ins. Co. of America,* 281 N.Y. 375, 380–81, 24 N.E.2d 87 (1939), that, although an application had not been attached to the policy, it could be admitted as extrinsic evidence in an action to show that the insured was aware of a limitation of the insurance agent's authority. Shortly thereafter, the New York State legislature amended the statute to provide that an application could not be admitted under any circumstances unless a true copy of the application was attached to the policy. *Gozan v. Mutual Life Ins. Co. of New York,* 40 N.Y.2d 707, 711–12, 389 N.Y.S.2d 816, 818–19, 358 N.E.2d 499, 501–02 (1976). The current form of this statute now appears at § 3204(a), which provides as follows:

(1) Every policy of life, accident or health insurance, or contract of annuity, delivered or issued for delivery in this state, shall contain the entire contract between the parties, and nothing shall be incorporated therein by reference to any writing, unless a copy thereof is endorsed upon or attached to the policy or contract when issued.

(2) No application for the issuance of any such policy or contract shall be admissible in evidence unless a true copy [of the application] was attached to such policy or contract when issued.

The design behind this statute has been set forth by the New York Court of Appeals:

The purpose of this statute is to protect insureds from the loss of their insurance after many years of premium payment without knowledge of infirmities in the contract, especially when the applications are filled out by avid salesman of insurance, or even if the insurance is procured by their own fraud.

*Cutler v. Hartford Life Insurance Co.,* 22 N.Y.2d 245, 251, 292 N.Y.S.2d 430, 436, 239 N.E.2d 361, 365 (1968). As further explained in *Gozan v. Mutual Life Ins. Co. of New York,*

[i]t is clear that this section is directed toward the protection of the insured or his or her beneficiary by providing the insured with the opportunity to examine those writings, including applications, that may be relevant to the policy and, particularly in the case of applications, affording an opportunity to correct any incorrect statements therein.

40 N.Y.2d 707, 711, 389 N.Y.S.2d 816, 818, 358 N.E.2d 499, 501 (1976), *rearg. den.,* 41 N.Y.2d 1009, 395 N.Y.S.2d 1027, 363 N.E.2d 1194 (1977). Consistent with this intent, statutes of this sort have an expansive reach. "If the application itself is inadmissible, the insurer may not prove by parol any false statements contained therein." Appleman, Insurance Law and Practice § 12351 at 465 (1980). *Abbott,* 281 N.Y. at 382–83, 24 N.E.2d 87 (quoting *Lampke v. Metropolitan Life Ins. Co.,* 279 N.Y. 157, 162, 18 N.E.2d 14 (1938)).

Prior to the revisions to section 58, it had been held that this section did not apply to reinstatement applications. *New York Life Ins. Co. v. Rosen,* 227 A.D. 79, 236 N.Y.S. 659, 662 (1929), *aff'd,* 255 N.Y. 567, 175 N.E. 316 (1930). The same revisions that overturned the result in *Abbott* also provided protections for insureds filing applications for reinstatement. Those protections now appear at § 3204(e).

Plaintiff concedes that the purpose behind § 3204(a)(2) should guide this Court's application of § 3204(e) but argues that the latter section only serves to assist the insured in correcting errors close to the time of the

reinstatement rather than at the time the insurer contests a claim. It argues that it would defeat the purpose of the statute to apply it when the insured requests a copy of the application after a claim investigation has begun, because substantial premiums have already been paid under the policy and because it is too late for the insured to correct the application. This interpretation, however, relies upon an overly narrow reading of the statutory history and would contradict the plain language of the statute.

Plaintiff essentially asks this court to read additional words into § 3204(e) and to divine a restriction as to its time of operation where no such restriction exists on the face of the statute. Considering the pro-insured history of § 3204 and the case law specifically interpreting § 3204(a), there is no statutory basis to create or infer such a limitation. The purpose behind § 3204(a) does bear on the interpretation given to subsection (e) but primarily to the extent that it affirms the legislature's commitment to the protection of the insured.[5] Plaintiff's argument that subsection (e) serves solely to allow the insured to rectify errors must be incorrect. When enacting what is now subsection (e), the legislature could have provided procedural approaches similar to subsection (a) but chose not to, instead placing the burden of affirmatively requesting copies of certain applications on the insured. The only purpose thus could not have been the correction of errors; it would be the rare insured who would spontaneously request his application to check for mistakes. The specific ill remedied by subsection (a)(2) remains unaffected with respect to reinstatement applications—it is still more than likely that the first time the insured receives notice of an error or misrepresentation will be when the insurer begins investigating a claim. But *Rosen* notwithstanding, the New York legislature clearly intended that insureds have the right to receive copies of their reinstatement applications, for whatever reason, and at the time of their choos-

ing. Subsection (e) may serve less to correct errors and more to defuse insurance disputes before they escalate, allowing insureds to confront their insurer informally (as defendant here attempted to do) before either resorts to the court. Additionally, it operates to ensure that the insured has access to his representations and statements on demand, which is consistent with the contract-based origins of the statute as a whole and is a justifiable legislative end all its own.

Accordingly, the Court finds that § 3204(e) means what it says and that, where an insured requests a copy of his reinstatement application, the copy must be mailed within fifteen days of when the request is received and that the insurer shall otherwise be precluded from introducing the application as evidence in any relevant action. At the very least, the insured retains this right for a reasonable time after he is notified that his claim being investigated.[6] Since the defendant insured has made a request under the statute and plaintiff has failed to comply with its statutory requirements, plaintiff is precluded from using the reinstatement application as evidence in this action. Plaintiff is similarly precluded from presenting any evidence of the false statements contained therein, and thus summary judgment against it is granted on the cause of action contained in the original complaint.

Plaintiff has requested leave to amend its complaint to set forth a second cause of action based on the following clause of the policy:

If reinstated, Policy rights remain the same as before the due date of the overdue premium subject to the following. We may require a change in coverage in order for the Policy to continue. Also, an injury must occur after the date of reinstatement to be covered.

**The Policy will cover only those sicknesses which begin after the coverage has been in force for ten days.** The

---

5. *Cf. Rosen,* 236 N.Y.S. at 662 (the specific policies behind subsection (a) "have no bearing on the matter of reinstatement of a policy.")

6. Plaintiff argues that defendant's use of the statute is no different than if he had made his request after the lawsuit had begun and after

discovery had commenced. That is not this case. Here, defendant made his request soon after he had notice of the investigation, and plaintiff's fears that § 3204(e) would supplant discovery are unfounded.

reinstatement will also be subject anew to the two year periods stated in General Provision 2 of this policy, measured from the date of reinstatement.

(Emphasis added.) The plaintiff alleges that the defendant had been diagnosed with AIDS in August 1990, two years before the policy was reinstated in December 1992. Plaintiff would like to amend the complaint to seek a declaratory judgment that the defendant's claim is not covered by this clause. Plaintiff has not to date submitted a proposed amended complaint to the Court.

Generally, leave to amend under Federal Rule of Civil Procedure 15(a) "should be permitted in the absence of undue delay, bad faith, or undue prejudice to the opposing party." *Thomas v. New York City*, 814 F.Supp. 1139, 1145 (E.D.N.Y.1993) (Sifton, J.) (citations omitted). On its face, the rule states that "leave shall be freely given when justice so requires." This Court is required to "'take into account any prejudice' that might result to the party opposing the amendment." *Ansam Assoc. Inc. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 446 (2d Cir. 1985) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330–31, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971)). Also, "where the claims sought to be asserted are totally without merit and would result in a futile gesture, leave to amend should be denied." *Love v. New York State Dep't of Environ. Conserv.,* 529 F.Supp. 832, 845 (S.D.N.Y.1981); *Williams v. Brooklyn Union Gas Co.,* 819 F.Supp. 214, 223 (E.D.N.Y.1993) (discussing *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

Morgan has opposed this motion, arguing that the plaintiff's legal theory would not survive a motion to dismiss. Morgan argues that, since "sickness" is defined by the policy as "sickness or disease which causes loss" and since at least one New York case has held that an incipient condition does not result in a "sickness" until it matures and the

insured's life functions are impaired, he did not develop a "sickness" under the policy until he filed his claim 18 months after the reinstatement. *See Reiser v. Metropolitan Life Ins. Co.,* 262 A.D. 171, 28 N.Y.S.2d 283 (1st Dept.1941), *aff'd,* 289 N.Y. 561, 43 N.E.2d 534 (1942). Defendant argues that under *Reiser,* the plaintiff's proposed amendment would be futile and so leave should not be granted. Because the plaintiff has not provided the Court with a proposed amended complaint, it would be premature to rule as defendant requests and effectively dismiss a complaint without having a full opportunity to review it. The Federal Rules of Civil Procedure offer defendant ample opportunity to attack the amended complaint as meritless once it is filed, and thus no prejudice attaches in this respect if leave to amend is granted. Moreover, because of the early stage of this proceeding, the overall prejudice defendant might suffer is minimal. The action was begun only two months ago, and although defendant has answered and filed a summary judgment motion, virtually no discovery has taken place. Defendant would of course be free to respond to a new pleading as he sees fit, with either an answer, a Rule 12 motion, or some other device; and Morgan may renew this particular objection at that time.[7]

Therefore, defendant's motion for summary judgment on the cause of action contained in the original complaint is granted, and plaintiff's motion to amend its complaint is also granted. Plaintiff is directed to serve and file an amended complaint within thirty days of the date of this decision.

The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.

---

7. At oral argument, the Court raised the question of whether the preclusive effect of § 3204(e) would warrant summary judgment on this cause of action as well. Since this issue has not been fully briefed by the parties, the Court declines to rule on this issue at this time, and if defendant deems it appropriate he may raise it anew in any subsequent motion. At this stage, however, plaintiff's proposed amendment does not appear to be futile and will be permitted. *See Hayden,* 386 N.Y.S.2d at 980–81 (fact that insurer was precluded from introducing reinstatement application to prove misrepresentation did not affect a claim that insured's condition was present before the policy period since "to establish his case [the insurer] need not rely upon defendant's applications.").