12-3071-cv
Smith v. Pruco Life Ins. Co. of N.J.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

—————————

August Term, 2012

(Argued: March 5, 2013     Decided: March 19, 2013)

Docket No. 12-3071-cv

—————————

RONALD SMITH, SUCCESSOR TRUSTEE UNDER THE JAMES W. COOPS TRUST,

*Plaintiff-Appellant*,

— v. —

PRUCO LIFE INSURANCE COMPANY OF NEW JERSEY,

*Defendant-Appellee*.

—————————

B e f o r e:

LYNCH, LOHIER, and CARNEY, *Circuit Judges*.

—————————

Plaintiff-appellant Ronald Smith appeals the district court's entry of judgment, following a bench trial, in favor of defendant-appellant Pruco Life Insurance Company of New Jersey ("Pruco"). Smith sought to recover benefits as the beneficiary of a term life insurance policy upon the death of the insured, Michael Coops. Relying on an application for benefits attached to Coops's policy at the time of delivery, the district court (Leonard

D. Wexler, *Judge*) concluded that the policy never became effective because of Coops's failure to disclose a cancer diagnosis, and that Smith was therefore not entitled to a benefit. Contrary to Smith's assertions, the district court properly relied upon the application. Because Smith concedes, first, that the application contained information Coops knew to be untrue when the policy was delivered, and, second, that Pruco would not have issued the policy had the information been correct, the district court correctly held that the policy never took effect.

      AFFIRMED.

————————————

NORMAN H. DACHS, Shayne, Dachs, Sauer & Dachs, LLP, Mineola, New York, *for plaintiff-appellant*.

MICHAEL S. GUGIG, Saul Ewing LLP, Newark, New Jersey, *for defendant-appellee*.

————————————

PER CURIAM:

      Plaintiff-appellant Ronald Smith commenced this action in New York State Supreme Court against defendant-appellant Pruco Life Insurance Company of New Jersey ("Pruco"). Smith alleged that he was the beneficiary of a $1 million insurance policy issued by Pruco on the life of Michael Coops; that Michael Coops had died; and that Smith was therefore entitled to a payment from Pruco of $1 million plus interest from the date of Coops's death. Pruco removed the action to the United States District Court for the Eastern District of New York, which had diversity jurisdiction under 28 U.S.C. §

2

1332(a)(1). Following a bench trial, the district court entered judgment in favor of Pruco, holding that it was entitled to rescind the policy because of a material misrepresentation made by Coops in securing the policy, and that Smith was therefore not entitled to a benefit. Smith now appeals the district court judgment. We affirm.

The material facts are not in dispute. Coops applied by telephone for a term life insurance policy from Pruco in July of 2007; a Pruco employee recorded the information Coops provided. On or before September 7, 2007, Coops was diagnosed with Stage IV colon cancer. Subsequently, on September 29, 2007, Pruco delivered the life insurance policy to him. The policy contained the following statement: "This policy and any attached copy of an application, including an application requesting a change, form the entire contract." (J. App'x 138.) Physically attached to the policy was a document entitled "Application for Life Insurance," which contained the information provided by Coops to Pruco prior to his cancer diagnosis. Accordingly, the application indicated that Coops had never been diagnosed with or treated for cancer. The application also included a section titled "Terms and Conditions," which specified:

> Unless I have specified a policy date or special payment plan
> . . . in this application, I understand that if the initial premium
> is not paid with this request for coverage, the policy will
> become effective when all of the following conditions are
> met:
>
> - the policy is issued, delivered and I accept it,
> - the health of all persons proposed for insurance
>   remains as stated in the application and

3

> • the first premium is paid in full and the check or other form of payment is good and can be collected.

(J. App'x 153.)

Coops was presented with two copies of the application when the policy was delivered to him on September 29, 2007. The first was physically attached to the policy; the second was not. Coops made two changes to the latter copy, first correcting an error in his billing address, and second, signing and dating the application, thereby attesting that: (1) "[t]o the best of [his] knowledge and belief, the statements in [the] application [were] complete, true and correctly recorded," and (2) he would "inform the Company of any changes in [his] health, mental or physical condition, or of any changes to any answers on [the] application, prior to or upon delivery of [the] policy" (J. App'x 167-68). A representative of Pruco also signed that copy of the application. Pruco retained the signed and amended version of the application, while Coops retained the version that was attached to his policy.

Coops never informed Pruco of his cancer diagnosis or treatment or attempted to amend or supplement the information in the application, which indicated that he had not been diagnosed with cancer. The parties agree that Pruco issued the policy only because it did not know of the diagnosis prior to, or at the time of, delivery on September 29, 2007. Coops paid premiums until he died on April 28, 2009. Following his death, Pruco learned for the first time that Coops had been diagnosed with colon cancer before the policy was delivered. Pruco rescinded the policy, relying on New York law that permits

4

an insurer to rescind an insurance policy *ab initio* if "the insured made a material misrepresentation when he or she secured the policy," Novick v. Middlesex Mut. Assurance Co., 924 N.Y.S.2d 296, 296 (2d Dep't 2011).  It denied Smith's claim for a death benefit and returned Coops's premium payments.  This suit followed.

The district court held a bench trial at which the primary disputed issue was whether the court could consider the application attached to the policy in determining whether Coops had made a misrepresentation to Pruco.  Relying on New York Insurance Law § 3204(a)(2), Smith argued to the district court, as he does on appeal, that the policy was not admissible as evidence to establish Coops's alleged misrepresentation.  The district court admitted and considered the application and found in Pruco's favor.

New York Insurance Law § 3204(a) provides, in relevant part:

> (1) Every policy of life . . . insurance . . . delivered or issued
> for delivery in this state, shall contain the entire contract
> between the parties, and nothing shall be incorporated therein
> by reference to any writing, unless a copy thereof is endorsed
> upon or attached to the policy or contract when issued.
>
> (2) No application for the issuance of any such policy or
> contract shall be admissible in evidence unless a true copy
> was attached to such policy or contract when issued.

Smith focuses on the term "true copy" used in subdivision 2.  He presumes that the application for insurance sought to be introduced in evidence is the one that bears Coops's signature, and argues that a "true copy" of that application was not attached to the policy, as the version that was attached was unsigned and did not reflect Coops's correction of his billing address.  The district court rejected Smith's argument, concluding

5

that "the unsigned application attached to the delivered Policy served the purposes of § 3204(a)(2) and constituted a 'true copy,'" properly considered as evidence. Smith v. Pruco Life Ins. Co. of N.J., 882 F. Supp. 2d 391, 394 (E.D.N.Y. 2012). We agree.

Under § 3204, insurance companies are obligated to "set[] forth in each policy issued the entire agreement, as well as every statement or representation which induced its making, and upon which the company relied, if it is to be available as a defense." Hurley v. John Hancock Mut. Life Ins. Co., 288 N.Y.S. 199, 202 (4th Dep't 1936) (construing predecessor to § 3204). New York courts have explained that § 3204 is "directed toward the protection of the insured or his or her beneficiary by providing the insured with the opportunity to examine those writings, including applications, that may be relevant to the policy and, particularly in the case of applications, affording an opportunity to correct any incorrect statements therein." Gozan v. Mut. Life Ins. Co. of N.Y., 40 N.Y.2d 707, 711 (1976); accord Cutler v. Hartford Life Ins. Co., 22 N.Y.2d 245, 252 (1968) ("The purpose in furnishing copies of statements to purchasers of insurance, insureds, or beneficiaries is to afford them, as the case may be, the opportunity to correct material errors, or to expose the invalidity of the contract."); Equitable Life Assurance Soc. of the U.S. v. Rocanova, 592 N.Y.S.2d 360, 362 (1st Dep't 1993) (explaining that § 3204 is "calculated to afford the insured the opportunity to examine a copy of his application to ascertain that his answers have been recorded properly"). The purpose of allowing the insured to review, understand and correct at the time of delivery any information that the insurance company might raise as a defense to coverage is to ensure

6

that "interested persons may avoid either being misled as to the insurance protection obtained or paying premiums for years in ignorance of facts nullifying the supposed protection." Cutler, 22 N.Y.2d at 252; see also id. at 251 ("The purpose of the statute is to protect insureds from loss of their insurance after many years of premium payment without knowledge of infirmities in the contract, especially when the applications are filled out by avid salesmen of insurance, or even if the insurance is procured by their own fraud.").

Accordingly, a document may be incorporated by reference into a life insurance policy, and relied on by the insurer as a defense to coverage, if and only if it is "endorsed upon or attached to the policy or contract when issued," N.Y. Ins. Law § 3204(a)(1), so that the insured has an opportunity to review and understand the full terms and conditions of the policy from the moment he begins to pay premiums. In this case, it is undisputed that the unsigned copy of the application was attached to the policy at the time of delivery. Coops had an opportunity to review and correct the terms, conditions and other information contained therein, and that information therefore could be, and indeed was, incorporated into the contract between Pruco and Coops. The precise document that was attached to the policy makes clear that the policy would not become effective unless and until it was delivered and accepted, Coops's health remained as stated in the application, and the first premium was paid. It would come as no surprise to Coops, and should not come as a surprise to his beneficiary, that Pruco raises as a defense Coops's failure to disclose his cancer diagnosis prior to, or at the time of, accepting the policy.

7

Smith focuses on the signed version of the application that *was not* attached to the policy and asks whether the version that *was* attached is a "true copy" of the unattached version within the meaning of § 3204(a)(2). He suggests that because Coops never executed the very application attached to the policy as delivered to him, but instead executed a different copy of that same document, no version of the application can be relied on as evidence of the policy's terms. But the fact that the insured executed, at the time of delivery, a copy other than the one attached to his policy does not change the fact that the application, with all its terms and conditions, was in fact attached to his policy. That version may be relied on by Pruco.[1]  See Hidary v. Maccabees Life Ins. Co., 591 N.Y.S.2d 706, 709-10 (N.Y. Sup. Ct. 1992).

As the New York Court of Appeals has explained, § 3204(a)(2) was not intended to provide an exception to subsection (a)(1), but instead was meant to establish that an application for coverage should not be treated differently from any other document – an application, like all other writings, may be incorporated into a policy if it is attached to the policy at the time of delivery. See Gozan, 40 N.Y.2d at 711-12. Specifically, a provision governing the admissibility of applications identical to § 3204(a)(2) was added to § 3204's predecessor statute in 1940 in response to Abbott v. Prudential Insurance Co.,

---

[1] Because it would not affect our holding, we do not decide whether the executed copy of the application is also admissible, either because it was signed by Coops at the time of delivery, see N.Y. Ins. Law § 3204(a)(1), or because the only alterations Pruco might want to rely on were made by Coops himself, see id. § 3204(d) ("No insertion in or other alteration of any written application for any such policy or contract shall be made *by any person other than the applicant* without his written consent . . . ." (emphasis added)).

281 N.Y. 375 (1939), in which the court, "though acknowledging that no part of the application had been attached to the policy as required by [statute], nevertheless held the application admissible to prove that the insured knew of [a] limitation of the [insurance broker's] authority. Recognizing this result as antithetical to the intent [of § 3204(a)(1)'s predecessor], the Legislature added the second sentence, to [ensure] that no application for the issuance of any such policy shall be admissible in evidence unless a true copy of such application was attached to such policy when issued." Gozan, 40 N.Y.2d at 711-12 (internal quotation marks and alterations omitted). In other words, requiring that a "true copy" of an application be attached to a policy at the time of delivery serves the same purpose as requiring that any and all other incorporated documents be attached to a policy at the time of delivery – to ensure that the insured has an opportunity to review, correct, and understand unequivocally the terms and conditions on which the policy has been issued.

Thus, an insurer may not introduce as evidence representations or statements by the insured if the insured "did not have a copy of such statements[,] . . . could not, by reading his policy, know what the statements were[, or] had no opportunity to correct any error in the statements." Lampke v. Metro. Life Ins. Co., 279 N.Y. 157, 162 (1938). The representations contained in Coops's application do not satisfy any of these criteria. Coops was able, at the time of delivery, "to read, in the policy itself, every provision of the contract the insurance company ha[d] made and every material representation which he may have made to induce the company to issue the policy," Mass. Mut. Life Ins. Co. v.

9

<u>Lord</u>, 238 N.Y.S.2d 222, 224 (1st Dep't 1963) (internal quotation marks omitted), <u>aff'd</u>, 13 N.Y.2d 1096 (1963). Thus, because the representations, terms and conditions on which Pruco seeks to rely were expressly incorporated into the policy and were attached to that policy at the time of delivery, they may be considered in evidence pursuant to New York Insurance Law § 3204(a)(2).[2]

The Appellate Division's ruling in <u>Blatz v. Travelers Insurance Co.</u>, 68 N.Y.S.2d 801 (4th Dep't 1947), on which plaintiff heavily relies, does not affect this analysis. In <u>Blatz</u>, an insurance agent delivered a life insurance policy to the insured and received a premium payment. Several days later, he asked the insured to sign a rider excluding from coverage certain accidental deaths. He then gave an unsigned copy of the rider to the insured. When the insurance company attempted to rely on the terms of the rider to avoid paying benefits upon the insured's death, the court held that it could not.

> The essential fact which remains undisputed is that neither the
> original aviation rider nor any duplicate of the same nor even
> the unexecuted copy was ever physically attached to the

---

[2] The New York Court of Appeals appears not to have addressed the precise question of whether an unexecuted copy of an application attached to a policy may be entered into evidence. Despite that lack of guidance, we see no need to certify the question to the Court of Appeals. The text of § 3204(a), the decisions of the New York Court of Appeals and the Appellate Divisions construing the statute, and the policies underlying it are both consistent and sufficient to make clear that the one New York case on point, though the opinion of a trial court, <u>see</u> <u>Hidary</u>, 591 N.Y.S.2d at 709-10, was correctly decided. <u>See</u> <u>Amerex Grp., Inc. v. Lexington Ins. Co.</u>, 678 F.3d 193, 200 (2d Cir. 2012) ("[I]t is our job to predict how the New York Court of Appeals would decide the issues before us. Therefore, we do not certify questions of law where sufficient precedents exist for us to make a determination." (internal quotation marks, brackets and citations omitted)).

> policy. The Insurance Company was not free to make a
> binding contract with its insured changing or limiting the
> terms of the life policy without attaching such contract to the
> policy when issued so as to make it a part thereof.

Id. at 804.

By contrast, neither party to this action disputes that the representations Pruco relies on were physically attached to the policy. The Appellate Division in Blatz also observed that "[t]he word 'copy' implies that the instrument so labeled is identical with another instrument," id. at 806 (internal quotation marks omitted), and suggested that an unsigned copy of the rider might not be a "true copy" of the executed waiver, but this observation was not essential to the court's holding. In any event, even if we were to agree with the Blatz court on this point, it would not matter to the resolution of the present controversy. Whether or not Pruco can rely on the executed copy of the application, it can rely on the unexecuted copy that was in fact attached to the policy at delivery and clearly informed Coops that the policy would not take effect unless his health was as stated in the application at the time he accepted the policy and paid his first premium. Coops knew that his health was not as stated in the application, but he did not correct this information when given the chance at the time of delivery and instead began to pay his premiums.

Finally, Smith observes that the policy specifies a "contract date" of August 27, 2007, and defines "contract date" to be the same as "issue date." He argues that the policy was therefore issued on August 27, 2007, which was before he received his cancer

11

diagnosis on September 7. According to Smith, this means that Pruco issued the policy based on information that was entirely truthful, and he had no duty to disclose a diagnosis he received after the policy was already in effect. However, plaintiff also acknowledges that the application, if admissible, clearly states that the contract would not take effect until delivery was made and accepted, his health remained the same as stated in the application, and the first premium was paid.

Because we conclude that the application was properly admitted as evidence at the bench trial, Pruco could rely on it to establish that the contract could not come into effect unless and until those conditions were satisfied. See Stipcich v. Metro. Life Ins. Co., 277 U.S. 311, 316 (1928) ("[B]oth by the terms of the application and familiar rules governing the formation of contracts no contract came into existence until the delivery of the policy, and at that time the insured had learned of conditions gravely affecting his health, unknown at the time of making his application."). Smith concedes that the conditions were not satisfied, and Pruco is therefore entitled to rescind the policy.

Accordingly, we AFFIRM the judgment of the district court.